ORIGINAL
FILED

2012 SE -7 P 12: 38

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA 94104
4  Telephone: 415/288-4545
   415/288-4534 (fax)
5  shawnw@rgrdlaw.com
      – and –
6  DARREN J. ROBBINS (168593)
   DAVID C. WALTON (167268)
7  CATHERINE J. KOWALEWSKI (216665)
   655 West Broadway, Suite 1900
8  San Diego, CA 92101
   Telephone: 619/231-1058
9  619/231-7423 (fax)
   darrenr@rgrdlaw.com
10 davew@rgrdlaw.com
   katek@rgrdlaw.com
11
   Attorneys for Plaintiff
12
   [Additional counsel appear on signature page.]
13
                    UNITED STATES DISTRICT COURT                    YGR
14
                  NORTHERN DISTRICT OF CALIFORNIA
15
   STEVEN N. BELL, Individually and on Behalf )   No.  1 2      4 6 7 7.
16 of All Others Similarly Situated,          )
                                              )   CLASS ACTION
17                        Plaintiff,          )
                                              )   COMPLAINT FOR VIOLATION OF THE
18        vs.                                 )   FEDERAL SECURITIES LAWS
                                              )
19 UBIQUITI NETWORKS, INC., ROBERT J.         )
   PERA, JOHN RITCHIE, PETER Y. CHUNG,        )
20 CHRISTOPHER J. CRESPI, CHARLES J.          )
   FITZGERALD, JOHN L. OCAMPO,                )
21 ROBERT M. VAN BUSKIRK, UBS                 )
   SECURITIES LLC, DEUTSCHE BANK              )
22 SECURITIES INC., RAYMOND JAMES &           )
   ASSOCIATES, INC., PACIFIC CREST            )
23 SECURITIES LLC and THINKEQUITY LLC, )
                                              )
24                        Defendants.         )
                                              )   DEMAND FOR JURY TRIAL
25 _____)
26
27
28

1    Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which

2    included a review of United States Securities and Exchange Commission ("SEC") filings by Ubiquiti

3    Networks, Inc. ("Ubiquiti" or the "Company"), as well as regulatory filings and reports, securities

4    analysts' reports and advisories about the Company, press releases and other public statements

5    issued by the Company, and media reports about the Company, and plaintiff believes that substantial

6    additional evidentiary support will exist for the allegations set forth herein after a reasonable

7    opportunity for discovery.

8                                **NATURE OF THE ACTION**

9         1.     This is a securities class action on behalf of all persons who purchased or otherwise

10   acquired the common stock of Ubiquiti between October 14, 2011 and August 9, 2012, inclusive (the

11   "Class Period"), and/or who acquired shares of Ubiquiti common stock pursuant or traceable to the

12   Company's false and misleading Registration Statement and Prospectus issued in connection with its

13   October 14, 2011 initial public offering ("IPO"), seeking to pursue remedies under the Securities Act

14   of 1933 ("1933 Act") and the Securities Exchange Act of 1934 ("1934 Act").

15        2.     Ubiquiti designs, manufactures and sells broadband wireless solutions worldwide.

16   The Company offers a portfolio of wireless networking products and solutions, including systems,

17   high performance radios, antennas and management tools, designed for wireless networking and

18   other applications in the unlicensed radio frequency ("RF") spectrum.   The Company offers

19   solutions that incorporate its RF technology, antenna design and firmware technologies, which it

20   refers to as AirTechnologies.

21        3.     During the Class Period, defendants issued materially false and misleading statements

22   regarding the Company's business practices and financial results.  Specifically, defendants failed to

23   disclose negative trends in Ubiquiti's business, including widespread problems associated with

24   counterfeit versions of its AirMax wireless gear being made available to the market.  As a result of

25   defendants' false statements, Ubiquiti stock traded at artificially inflated prices during the Class

26   Period, reaching a high of $35 per share on May 1, 2012.

27        4.     On or about October 14, 2011, Ubiquiti filed its Prospectus for the IPO, which forms

28   part of the Registration Statement and which became effective on October 13, 2011.  At least 7,038

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 1 -

1  million shares of Ubiquiti common stock were sold to the public at $15 per share, raising $105.6

2  million in gross proceeds for the Company and the selling shareholders.

3       5.    On May 1, 2012, after announcing disappointing third quarter fiscal year 2012

4  financial results,[1] the Company acknowledged that Kozumi USA Corp. ("Kozumi"), a former

5  distributor of Ubiquiti's, had stolen source codes and proprietary designs for the Company's popular

6  and profitable AirMax line of products and was engaged in a scheme to manufacture and distribute

7  counterfeit Ubiquiti products in South America and other emerging markets in direct competition

8  with the Company.

9       6.    After this news, Ubiquiti stock plummeted $6.10 per share to close at $28.90 per

10  share on May 2, 2012, a one-day decline of 17% on volume of nearly 4.1 million shares.  However,

11  the stock continued to be artificially inflated as defendants assured investors that the Company had

12  the matter contained and minimized the effect the counterfeit activities would have on the

13  Company's operations.  Moreover, defendants concealed the widespread nature of the counterfeiting

14  activities and the serious impact they would have on the Company's future results.

15       7.    Thereafter, on August 9, 2012, Ubiquiti announced its fourth quarter fiscal 2012

16  financial results and announced disappointing guidance for the first quarter of fiscal 2013. Ubiquiti

17  admitted that the distribution of the unauthorized copies of its communication gear was more

18  widespread than previously disclosed and would have a detrimental impact on the Company's future

19  results.

20       8.    As a result of this news, Ubiquiti stock declined $6.30 per share to close at $8.71 per

21  share on August 10, 2012, a one-day decline of nearly 42%, on volume of over 7.6 million shares.

22  This further represented a 42% decline in Ubiquiti's stock price from the IPO price of $15 per share.

23       9.    During the Class Period, defendants knew, but concealed from the investing public:

24

25

26

_____

27  [1]    Ubiquiti's fiscal year ended June 30.

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS       - 2 -

1        (a)     The true magnitude of the risks the Company faced from counterfeit goods.

2  In 2011, former partners of Ubiquiti had stolen plans and manufactured and sold identical copies of

3  the Company's popular and profitable AirMax products.

4        (b)     The widespread nature and extent of the counterfeit operations and the impact

5  the counterfeit activities would have on the Company's future operating results.

6        (c)     The increased risks to the Company's operations due to its unique business

7  model, whereby it relied exclusively upon distributors to sell its products to end customers.

8        (d)     That the Company lacked the proper internal controls to prevent its product

9  designs from being stolen and replicated.

10     10.     As a result of defendants' false statements, Ubiquiti's stock traded at inflated levels

11  during the Class Period.  However, after the above revelations seeped into the market, the

12  Company's shares were hammered by massive sales, sending them down over 75% from their Class

13  Period high.

14                       **JURISDICTION AND VENUE**

15     11.     The claims asserted herein arise under and pursuant to §§11 and 15 of the 1933 Act

16  [15 U.S.C. §§77k and 77o], and §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)]

17  and SEC Rule 10b-5 [17 C.F.R. §240.10b-5].  This Court has jurisdiction over the subject matter of

18  this action pursuant to 28 U.S.C. §1331, §27 of the 1934 Act and §22 of the 1933 Act.

19     12.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because defendants

20  maintain an office in this District and many of the acts and practices complained of herein occurred

21  in substantial part in this District.

22     13.     In connection with the acts and conduct alleged in this complaint, defendants, directly

23  or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

24  to, the mails and interstate wire and telephone communications.

25                            **PARTIES**

26     14.     Plaintiff Steven N. Bell, as set forth in the accompanying certification and

27  incorporated by reference herein, purchased the common stock of Ubiquiti during the Class Period

28  and has been damaged thereby.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 3 -

1    15.    Defendant Ubiquiti designs, manufactures and sells broadband wireless solutions

2  worldwide.  Ubiquiti's principal executive offices are located at 91 East Tasman Drive, San Jose,

3  California 95134.

4    16.    Defendant Robert J. Pera ("Pera") founded the Company and serves as Chief

5  Executive Officer ("CEO") and a director of Ubiquiti.  Pera signed the false and misleading

6  Registration Statement.

7    17.    Defendant John Ritchie ("Ritchie") serves as Chief Financial Officer ("CFO") of

8  Ubiquiti.  In the IPO, Ritchie sold 82,500 shares of his Ubiquiti stock for gross proceeds of $1.2

9  million.  Ritchie signed the false and misleading Registration Statement.

10    18.    Defendant Peter Y. Chung ("Chung") serves as a director of Ubiquiti.  Chung signed

11  or authorized the signing of the false and misleading Registration Statement.

12    19.    Defendant Christopher J. Crespi ("Crespi") served as a director of Ubiquiti from

13  October 2010 to December 1, 2011.  Crespi signed or authorized the signing of the false and

14  misleading Registration Statement.

15    20.    Defendant Charles J. Fitzgerald ("Fitzgerald") serves as a director of Ubiquiti.

16  Fitzgerald signed or authorized the signing of the false and misleading Registration Statement.

17    21.    Defendant John L. Ocampo ("Ocampo") serves as a director of Ubiquiti.  In the IPO,

18  Ocampo sold 297,000 shares of his Ubiquiti stock for gross proceeds of $4.5 million.  Ocampo

19  signed or authorized the signing of the false and misleading Registration Statement.

20    22.    Defendant Robert M. Van Buskirk ("Van Buskirk") serves as a director of Ubiquiti.

21  Van Buskirk signed or authorized the signing of the false and misleading Registration Statement.

22    23.    The defendants referenced above in ¶¶16-17 are referred to herein as the "Officer

23  Defendants."

24    24.    The defendants referenced above in ¶¶18-22 are referred to herein as the "Director

25  Defendants" and are named as defendants solely for violations of the 1933 Act.

26    25.    Defendant UBS Securities LLC ("UBS") is a leading global investment banking and

27  securities firm, and one of the largest global asset managers.  UBS acted as an underwriter for

28  Ubiquiti's IPO, helping to draft and disseminate the offering documents.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 4 -

26.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") is the U.S. investment banking and securities arm of Deutsche Bank AG.  Deutsche Bank provides investment banking products and services.  Deutsche Bank acted as an underwriter for Ubiquiti's IPO, helping to draft and disseminate the offering documents.

27.     Defendant Raymond James & Associates, Inc. ("RJA") is a financial investment advisory firm.  RJA acted as an underwriter for Ubiquiti's IPO, helping to draft and disseminate the offering documents.

28.     Defendant  Pacific Crest Securities LLC ("Pacific Crest") provides investment banking products and services.  Pacific Crest acted as an underwriter for Ubiquiti's IPO, helping to draft and disseminate the offering documents.

29.     Defendant ThinkEquity LLC ("ThinkEquity") provides institutional brokerage, investment banking, and asset management services to small and middle market public and privately held companies and individuals.  ThinkEquity acted as an underwriter for Ubiquiti's IPO, helping to draft and disseminate the offering documents.

30.     The defendants named in ¶¶25-29 are referred to herein as the "Underwriter Defendants."

31.     Defendant Ubiquiti and the Officer and Director Defendants who signed the Registration Statement are strictly liable for the false and misleading statements incorporated into the Registration Statement.   The Underwriter Defendants drafted and disseminated the offering documents and were paid more than $7 million in connection therewith.   The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

### FRAUDULENT SCHEME AND COURSE OF BUSINESS

32.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Ubiquiti. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Ubiquiti common stock was a success, as it: (i) deceived the investing public regarding Ubiquiti's prospects and business; (ii) artificially inflated the

1  price of Ubiquiti common stock; and (iii) caused plaintiff and other members of the Class to

2  purchase Ubiquiti common stock at inflated prices.

3  **BACKGROUND**

4  33.  Ubiquiti makes products designed to help Internet service providers deliver high-

5  speed broadband access, often in emerging markets. Its popular AirMax line makes up over 60% of

6  the Company's annual revenue. Ubiquiti's target markets are countries that are poorly addressed and

7  underdeveloped in terms of Internet usage. Over 80% of Ubiquiti's sales comes from international

8  markets, including China and countries in South America.

9  34.  Ubiquiti has a unique business model for a hardware company, as it operates a very

10  lean distribution business model. It does not have a direct sales force, but instead relies upon its

11  social networking to facilitate market awareness and demand for its products and solutions. It

12  utilizes its "community" (via the Ubiquiti Forum) to instigate sales. The Company sells most of its

13  products to distributors rather than to end customers.

14  35.  Kozumi served as a distributor for Ubiquiti products in South America from May

15  2008 until September 2009. Shao Wei Hsu ("Hsu"), a Brazilian citizen, is the sole officer and

16  director of Kozumi. In September 2009, Ubiquiti terminated its agreement with Kozumi upon

17  discovering that Kozumi was offering copycat products under the Kozumi name, in violation of its

18  distribution agreement with Ubiquiti. Subsequently, Hsu initiated a counterfeit scheme with Kenny

19  Deng ("Deng"), owner of a Hong-Kong manufacturing facility called Hoky Technology ("Hoky"),

20  in order to steal Ubiquiti's source codes and proprietary designs for the Company's popular AirMax

21  platform of products. Once the stolen designs were procured, Hoky began manufacturing counterfeit

22  Ubiquiti products based upon the stolen source codes and proprietary designs at its facility in

23  Shenzhen, China. Simultaneously, Hsu obtained a trademark for "UBIQUITI NETWORKS" in

24  Argentina in October 2010 and began distributing the counterfeit goods throughout South America

25  and to other emerging markets.

26  36.  Unbeknownst to investors until May 2012, in March 2011, Ubiquiti was notified by a

27  distributor in China that counterfeit goods were being manufactured by Hoky. Over the course of

28  the next several months, Ubiquiti investigated the claims and verified their accuracy, confirming that

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 6 -

1  counterfeit Ubiquiti goods were in fact being manufactured at Hoky's Shenzhen plant. Ubiquiti

2  continued to monitor Hoky's activities and determined that in October 2011, the Hoky facility

3  shipped 31,000 fake Ubiquiti products with a value of about $1 million. In order to close down the

4  counterfeit scheme, Ubiquiti pursued a criminal case against the perpetrators in China.

5      37.    On November 17, 2011, the Shenzhen Public Security Bureau raided the Hoky

6  facility and seized evidence of the counterfeit operations and arrested Deng. Deng was released at

7  the end of December 2011 after he obtained the Argentinean trademark registration for UBIQUITI

8  NETWORKS from Hsu, and soon thereafter, the Hoky facility resumed its counterfeit operations.

9  ## DEFENDANTS' FALSE AND MISLEADING STATEMENTS
   ## MADE IN CONNECTION WITH THE IPO AND DURING THE CLASS PERIOD

10

11     38.    On or about October 13, 2011, Ubiquiti filed with the SEC a Form S-1/A Registration

12  Statement (the "Registration Statement"), which would later be utilized for the IPO.   The

13  Registration Statement incorporated by reference all subsequently filed prospectuses.   The

14  Registration Statement was negligently prepared and, as a result, contained untrue statements of

15  material facts or omitted to state other facts necessary to make the statements made not misleading

16  and was not prepared in accordance with the rules and regulations governing its preparation.

17     39.    On or about October 14, 2011, Ubiquiti filed its Prospectus for the IPO, which forms

18  part of the Registration Statement and which became effective on October 14, 2011.   The

19  Registration Statement and Prospectus represented the following as a risk factor from counterfeit

20  activities:

21          ***If our contract manufacturers do not respect our intellectual property and
            trade secrets and if they or others produce competitive products reducing our sales
22          or causing customer confusion, our business, operating results and financial
            condition could be materially adversely affected.***

23          Because our contract manufacturers operate in China, where prosecution of
            intellectual property infringement and trade secret theft is more difficult than in the
24          United States, certain of our contract manufacturers, their affiliates, their other
            customers or their suppliers may attempt to use our intellectual property and trade
25          secrets to manufacture our products for themselves or others without our knowledge.
            Although we attempt to enter into agreements with our contract manufacturers to
26          preclude them from using our intellectual property and trade secrets, we may be
            unsuccessful in monitoring and enforcing our intellectual property rights in China.
27          We have in the past found and expect in the future to find counterfeit goods in the
            market being sold as Ubiquiti products. Although we take steps to stop counterfeits,
28          we may not be successful and network operators and service providers who purchase

1    these counterfeit goods may have a bad experience and our brand may be harmed. If
     such an impermissible use of our intellectual property or trade secrets were to occur,
2    our ability to sell our products at competitive prices and to be the sole provider of our
     products may be adversely affected and our business, operating results and financial
3    condition could be materially and adversely affected.

4       40.    The Registration Statement concealed the nature and extent of the counterfeit

5  activities engaged in by Kozumi and Hoky, including concealing the ongoing nature of the activities.

6  The Registration Statement further concealed the impact the counterfeit operations would have on

7  the Company's future results, including lower revenue, as customers would mistakenly purchase

8  counterfeit versions of the Company's products, and higher expenses, as the Company would need to

9  substantially increase its expenses in order to protect its intellectual property.

10      41.    The IPO was successful for the Company, its insiders and the underwriters.  At least

11 7.038 million shares of Ubiquiti common stock were sold to the public at $15 per share, raising

12 $105.6 million in gross proceeds for the Company and the selling shareholders.  In the IPO, several

13 of Ubiquiti's officers and directors sold shares of their personally held Ubiquiti stock, including two

14 of the defendants. Defendant Ritchie sold 82,500 shares of his Ubiquiti stock for gross proceeds of

15 $1.2 million.  Defendant Ocampo sold 297,000 shares of his Ubiquiti stock for gross proceeds of

16 $4.5.  In addition, John Sanford, the Company's Chief Technology Officer, sold 123,145 shares of

17 his Ubiquiti stock for gross proceeds of $1.8 million, and Benjamin Moore, Vice President of

18 Business Development, sold 374,370 shares of his Ubiquiti stock for gross proceeds of $5.6 million.

19      42.    On November 10, 2011, Ubiquiti issued a press release announcing its first quarter

20 fiscal 2012 financial results.  The Company reported net income of $21.5 million, non-GAAP diluted

21 earnings per share ("EPS") of $0.23, and revenue of $79.2 million for the quarter.  Defendants Pera

22 and Ritchie commented on the results, stating in pertinent, as follows:

23           "Overall we are pleased with our first quarter as a public company.  We see
             this as a very good start to our ambitious goal of becoming a leading player in the
24           global communications technology market," said Robert J. Pera, Founder and Chief
             Executive Officer of Ubiquiti Networks.
25
             Mr. Pera continued, "This quarter marked the introduction of our AirVision
26           IP video surveillance platform; this exciting new product is our third technology
             platform following our disruptive AirMax platform, and our enterprise WiFi UniFi
27           platform launched earlier this year. With all three platforms showing strong end
             market demand and also taking into account several additional technology platforms
28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                          - 8 -

targeted for market introduction this fiscal year, we look for our growth and financial momentum to continue.

"Our solid first quarter results reflect strong demand worldwide for our technology platforms," said John Ritchie, Chief Financial Officer. "We continue to drive our financial results with our high productivity and cost-effective business model, and look to further this leverage as we add additional products to our established global distribution network."

43.     On January 31, 2012, Ubiquiti issued a press release announcing its second quarter fiscal 2012 financial results.  For the quarter, the Company reported net income of $24.7 million, non-GAAP diluted EPS of $0.27, and revenue of $87.8 million for the quarter.  Defendant Pera commented on the results, stating, in pertinent part, as follows:

"We recorded another solid quarter that exceeded expectations and outperformed our long-term targeted financial model.  The quarter marked the start of revenue contribution from our third technology platform, AirVision, a cost-disruptive, advanced IP Video surveillance system solution.  AirVision, like our AirMax and UniFi platforms, follows the unique Ubiquiti R&D template in which we design software foundations focused on a powerful user experience and hardware with great price performance characteristics," said Robert J. Pera, Founder and Chief Executive Officer of Ubiquiti Networks. "We are pleased with our early success in scaling and replicating our model across multiple connectivity technologies and are excited to compete in new addressable markets."

44.     On May 1, 2012, Ubiquiti stock closed at $35 per share, the Class Period high.

45.     On May 1, 2012, Ubiquiti issued a press release announcing its third quarter fiscal 2012 financial results.  For the quarter, the Company reported net income of $27.9 million, non-GAAP diluted EPS of $0.30, and revenue of $91.7 million for the quarter.

46.     After releasing its third quarter fiscal 2012 results on May 1, 2012, Ubiquiti hosted a conference call for analysts, media representatives and investors during which defendants represented the following:

[PERA:]   A key differentiator across all of our platforms is our IP, whether it is our proprietary technology or our highly regarded brands.  We plan on increasing our legal efforts around IP and brand protection as well as to protect our customers from counterfeiters.  The hiring of our new general counsel with significant experience in this area was a step in this direction.

Going forward, we intend to aggressively defend our IP to the full extent of the law, especially in foreign markets, where our brand is particularly strong, but markets that tend to be less disciplined about IP protection.  Whether through patent and trademark filing or seeking legal retribution from those that infringe on our patents and steal our technology and potentially damage our brand, we intend to increase our focus and financial commitment to this area.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                              - 9 -

1                                    *      *      *

2          [RITCHIE:]    Now, a little more detail in terms of our forecasted expenses.
    As we look ahead to the fourth quarter, we expect to see a meaningful increase in
3   operating expenses of approximately $1.5 million.  The largest component of this
    increase relates to costs to protect our intellectual property, as Robert discussed
4   earlier.

5          As we become more and more successful, we have unfortunately become the
    subject of counterfeiting efforts.  We intend to be aggressive in defending our IP and
6   the Ubiquiti brand around the globe.  After this increase, we expect our operating
    expenses to stay in the range of 8.5% to 9%, driven in the future primarily by
7   increased R&D investments.

8          47.    In late April 2012, in response to the Company's efforts to curb the counterfeit ring,

9   Hsu and Deng began circulating rumors in China that defendant Pera and the Company had ties with

10  the Chinese mafia and had enlisted the mafia to assist the Company in disputes with its competitors.

11  News of the rumors emerged in the United States on or around May 2, 2012, when the news was

12  picked up by the international media.

13         48.    Subsequently, on May 2, 2012, in response to the rumors, defendant Pera issued an

14  internal memo to Ubiquiti's employees which was leaked to the market later the same day, wherein

15  he denied the allegations.  The memo, which became public, stated in part:

16         As you know, we have been battling counterfeiters in China. The criminals
    are very clever; both former Ubiquiti distributors. One isChinese living in
17  DongGuan, China where are [sic] contract manufacturers(CM's) are based, the other
    is Taiwanese living in the United States running a WISP distributor in Argentina.
18  They are working as a team.

19         In 2011, we stopped doing business with both individuals because they broke
    our distributor agreement rules.
20
           Later that year, we discovered they had setup a factory in DongGuan
21  producing exact 100% identical versions of our products.  We believe they had paid
    someone inside our CM's, stole our PCB design files, schematics, BOM's, artwork,
22  Factory CD; everything.  They even hired former production engineers from LIteOn
    (our largest CM) to setup their manufacturing testing and processes.  And, they used
23  their Ubiquiti reseller connections to blend the counterfeit products into the Ubiquiti
    sales channel.  Because the counterfeit products were based on our designs, artwork,
24  and manufacturing processes; customers were not able to tell the products were
    counterfeit.  They thought they were buying genuine Ubiquiti products.
25
           When we discovered what was going on, we hired legal counsel in China to
26  aggressively shut them down.  We were successful and the Chinese individual (based
    in DongGuan, China) went to jail where he stayed awaiting trial.
27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                        - 10 -

We tried our best to make the case public to remove the possibility the criminal could pay his way out of trouble, but unfortunately, the criminal was able to pay off the judge in DongGuan and was released early this year.

Following the release, the criminals now feel empowered and are attempting to ramp up their operations. We also have ramped up our legal efforts to fight them. Jessica Zhou (our new General Counsel) was hired in March and she has been very aggressive in building a team in China and putting legal pressure on the criminals and their supply chains.

Feeling the pressure, I had recently received emails from the criminals threatening to damage our public reputation if we continue to pursue them. I refused. It appears in the past several days, they have made good on their threats.

I want everyone to know what is being said is not true. As a U.S. public company, we must obey FCPA (Foreign Corrupt Practices Act) which prohibits us from directly or indirectly using any form of bribery or illegal means to solve problems in China and we have been very careful in following the rules. The original story was posted by the criminals using a fake account on a China blogging site and inexplicably managed to get picked up by credible news sources (most likely with the help of those who are betting against our stock). We have been working today with most of the news sources and they have taken the story down. Additionally, we are pushing to have them post a formal apology for irresponsibly publicizing the unfounded allegations.

Please do not get distracted by this; it will pass. I have very high confidence in Jessica Zhou and believe her team will have the case resolved soon.

Please stay focused on your projects; we are behind on many of them and must accelerate our time to market.

49. After this news, Ubiquiti stock plummeted $6.10 per share to close at $28.90 per share on May 2, 2012, a one-day decline of 17% on volume of nearly 4.1 million shares. However, the stock continued to be artificially inflated as defendants assured investors that the Company had the matter contained and minimized the effect the counterfeit activities would have on the Company's operations. Moreover, defendants concealed the widespread nature of the counterfeiting activities and the serious impact they would have on the Company's future results.

50. On May 3, 2012, Ubiquiti issued a press release entitled "Ubiquiti Networks Launches Worldwide Campaign to Protect Its Intellectual Property Rights," which stated in part:

Ubiquiti Networks, Inc., a next-generation communications technology company reiterated with its customers the discovery of counterfeit products on the market and launched a worldwide campaign to aggressively defend its intellectual property and protect its customers.

The company believes that as a result of the effectiveness of its campaign, it has become subject to malicious and false accusations posted on overseas websites

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                          - 11 -

by those infringing on its intellectual property, and these false accusations have subsequently been reposted by unwary media outlets and news aggregators.

"While we do not normally comment on rumors, we take our business reputation very seriously and strive to conduct all of our activities in compliance with the law," said Jessica Zhou, General Counsel and Vice President of Legal Affairs of the company, "Our worldwide intellectual property protection efforts demonstrate that we take our customers' interest to heart and that we remain firmly committed to being a technology leader."

51.     On May 21, 2012, Ubiquiti announced that it had filed a lawsuit against Kozumi on May 18, 2012, and was seeking a temporary restraining order and permanent injunction against Kozumi to stop the counterfeiting ring from producing and distributing counterfeit Ubiquiti products. In the lawsuit, the Company acknowledged that the decline in the value of Ubiquiti's stock earlier in the month was due to the market's realization of the counterfeit activities.

52.     On July 9, 2012, Ubiquiti issued a press release entitled "Ubiquiti Wins Preliminary Injunction Against Principal of Counterfeiting Operation," which stated in part:

Ubiquiti Networks, Inc., a next-generation communications technology company, announced a major legal victory when a federal judge at the U.S. federal court for the Northern District of California last week granted a preliminary injunction enjoining Kozumi USA Corp. and its owner Shao Wei (William) Hsu from:

- using in any manner any registered trademark owned by Ubiquiti, the UBIQUITI, UBIQUITI NETWORKS, and Ubiquiti logo mark, or any name or mark that wholly incorporates or is confusingly similar to these trademarks;

- moving, destroying, or otherwise disposing of any items confusingly or deceptively similar to Ubiquiti's products and that bear any of Ubiquiti's trademarks;

- moving, destroying, or otherwise disposing of any records or documents containing information related to the manufacturing, distributing, delivering, shipping, importing, exporting, marketing, promoting, selling, or otherwise offering for sale of items that bear any of Ubiquiti's trademarks; and

- assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the above activities.

53.     Then, on August 9, 2012, Ubiquiti issued a press release announcing its fourth quarter and fiscal year 2012 financial results for the year ended June 30, 2012. The Company reported net income of $28.5 million, non-GAAP diluted EPS of $0.30, and revenue of $94.9 million for the fourth quarter of fiscal 2012. Further, the Company reported net income of $102.6 million, non-

1    GAAP diluted EPS of $1.09, and revenue of $353.5 million for the year ended June 30, 2012. The

2    release further stated in part:

3            Added Mr. Pera: "The Ubiquiti brand is dominant in our markets and demand
        for our technology is stronger than ever. This dominance has led to an unfortunate
4        side effect whereby a few previously terminated distributors setup counterfeit
        AirMax manufacturing operations. Although they have impacted our sales channel
5        and caused some marketplace confusion, we have made substantial and tangible
        progress in diminishing their activities through a comprehensive legal strategy that
6        has resulted in imprisonment, injunctions, and asset freezes of the counterfeiters. In
        addition, Ubiquiti has implemented sophisticated anti-counterfeit manufacturing
7        processes to substantially protect all of our new platforms and new AirMax products
        against any future counterfeit attempts."

8                                    *       *       *

9    **Business Outlook**

10           Ubiquiti currently believes the demand environment in its end markets
11       supports the following forecast for the Company's fiscal first quarter ending
        September 30, 2012:

12           •   Revenues of $62 million to $70 million

13           •   GAAP Diluted EPS of $0.14 to $0.17

14           •   Non-GAAP Diluted EPS of $0.14 to $0.17

15           •   We believe that the amount of counterfeited goods, combined with
16               the impact it has on our distributor's inventory and the purchasing
                patterns of our customers, will impact our business outlook for the
17               next two fiscal quarters.

18           •   Ubiquiti has taken comprehensive legal actions to stop the
                counterfeiters and minimize the impact of their activities.

19       54.    As a result of this news, Ubiquiti stock declined $6.30 per share to close at $8.71 per

20   share on August 10, 2012, a one-day decline of nearly 42%, on volume of over 7.6 million shares.

21   This further represented a 42% decline in Ubiquiti's stock price from the IPO price of $15 per share.

22       55.    Subsequently, on August 10, 2012, Wedbush Securities ("Wedbush") downgraded its

23   rating on Ubiquiti from Outperform to Neutral and lowered its price target from $17.00 to $8.00. In

24   its analyst report, Wedbush noted:

25           After initiating with an OUTPERFORM rating in May 2012, we clearly
26           underestimated the magnitude of the company's challenges as it relates to the
            prevalence of counterfeit products in the channel and concerns regarding Ubiquiti's
27           distribution model.

28       56.    During the Class Period, defendants knew, but concealed from the investing public:

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                      - 13 -

1         (a)    The true magnitude of the risks the Company faced from counterfeit goods.

2   In 2011, former partners of Ubiquiti had stolen plans and manufactured and sold identical copies of

3   the Company's popular and profitable AirMax products.

4         (b)    The widespread nature and extent of the counterfeit operations and the impact

5   the counterfeit activities would have on the Company's future operating results.

6         (c)    The increased risks to the Company's operations due to its unique business

7   model, whereby it relied exclusively upon distributors to sell its products to end customers.

8         (d)    That the Company lacked the proper internal controls to prevent its product

9   designs from being stolen and replicated.

10       57.    As a result of defendants' false statements, Ubiquiti's stock traded at inflated levels

11   during the Class Period. However, after the above revelations seeped into the market, the

12   Company's shares were hammered by massive sales, sending them down over 75% from their Class

13   Period high.

14   <center>**ADDITIONAL SCIENTER ALLEGATIONS**</center>

15       58.    As alleged herein, Ubiquiti and the Individual Defendants acted with scienter in that

16   they knew that the public documents and statements issued or disseminated in the name of the

17   Company were materially false and misleading; knew that such statements or documents would be

18   issued or disseminated to the investing public; and knowingly and substantially participated or

19   acquiesced in the issuance or dissemination of such statements or documents as primary violations of

20   the federal securities laws. As set forth elsewhere herein in detail, these defendants, by virtue of

21   their receipt of information reflecting the true facts regarding Ubiquiti, their control over, and/or

22   receipt and/or modification of Ubiquiti's allegedly materially misleading statements and/or their

23   associations with the Company which made them privy to confidential proprietary information

24   concerning Ubiquiti, participated in the fraudulent scheme alleged herein.

25   <center>**LOSS CAUSATION/ECONOMIC LOSS**</center>

26       59.    During the Class Period, as detailed herein, the defendants made false and misleading

27   statements and engaged in a scheme to deceive the market and a course of conduct that artificially

28   inflated the price of Ubiquiti common stock and operated as a fraud or deceit on Class Period

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS     - 14 -

1  purchasers of Ubiquiti common stock by misrepresenting the Company's business and prospects.

2  Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the

3  market, the price of Ubiquiti common stock fell precipitously, as the prior artificial inflation came

4  out of the price over time.  As a result of their purchases of Ubiquiti common stock during the Class

5  Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the

6  federal securities laws.

7  <div align="center">**NO SAFE HARBOR**</div>

8      60.  Ubiquiti's verbal "Safe Harbor" warnings accompanying its oral forward-looking

9  statements ("FLS") issued during the Class Period were ineffective to shield those statements from

10  liability.

11      61.  The defendants are also liable for any false or misleading FLS pleaded because, at the

12  time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was

13  authorized and/or approved by an executive officer of Ubiquiti who knew that the FLS was false.

14  None of the historic or present tense statements made by defendants were assumptions underlying or

15  relating to any plan, projection or statement of future economic performance, as they were not stated

16  to be such assumptions underlying or relating to any projection or statement of future economic

17  performance when made, nor were any of the projections or forecasts made by defendants expressly

18  related to or stated to be dependent on those historic or present tense statements when made.

19  <div align="center">**CLASS ACTION ALLEGATIONS**</div>

20      62.  Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

21  Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or otherwise

22  acquired shares of Ubiquiti common stock during the Class Period and/or pursuant or traceable to the

23  Company's false and misleading Registration Statement for its IPO, and who were damaged thereby

24  (the "Class").  Excluded from the Class are defendants and their families, the officers and directors

25  of the Company, at all relevant times, members of their immediate families and their legal

26  representatives, heirs, successors or assigns and any entity in which defendants have or had a

27  controlling interest.

28

63. The members of the Class are so numerous that joinder of all members is impracticable. Ubiquiti stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Ubiquiti or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Ubiquiti has more than 91.8 million shares of stock outstanding.

64. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

65. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

66. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the 1933 Act and 1934 Act were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period and in the Registration Statement misrepresented material facts about the business, operations and management of Ubiquiti; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

67. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 16 -

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
### FRAUD ON THE MARKET DOCTRINE

68.     At all relevant times, the market for Ubiquiti common stock was an efficient market for the following reasons, among others:

(a)     Ubiquiti common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, Ubiquiti filed periodic public reports with the SEC and the NASDAQ;

(c)     Ubiquiti regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Ubiquiti was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

69.     As a result of the foregoing, the market for Ubiquiti common stock promptly digested current information regarding Ubiquiti from all publicly available sources and reflected such information in the prices of the stock.  Under these circumstances, all purchasers of Ubiquiti common stock during the Class Period suffered similar injury through their purchase of Ubiquiti common stock at artificially inflated prices and a presumption of reliance applies.

### COUNT I

#### For Violation of §11 of the 1933 Act
#### Against All Defendants

70.     Plaintiff incorporates ¶¶1-31, 33-41, 45-48, 53-54 and 60-67 by reference.

71.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

72.     This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count. Plaintiff does not allege

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                        - 17 -

1    that the Officer Defendants, Director Defendants or the Underwriter Defendants had scienter or

2    fraudulent intent, which are not elements of a §11 claim.

3        73.     The Registration Statement for the IPO was inaccurate and misleading, contained

4    untrue statements of material facts, omitted to state other facts necessary in order to make the

5    statements made not misleading, and omitted to state material facts required to be stated therein.

6        74.     Ubiquiti is the registrant for the IPO. The defendants named herein were responsible

7    for the contents and dissemination of the Registration Statement.

8        75.     As issuer of the shares, Ubiquiti is strictly liable to plaintiff and the Class for any

9    misstatements and omissions.

10       76.     None of the defendants named herein made a reasonable investigation or possessed

11    reasonable grounds for the belief that the statements contained in the Registration Statement were

12    true and without omissions of any material facts and were not misleading.

13       77.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a

14    person who violated, §11 of the 1933 Act.

15       78.     Plaintiff acquired Ubiquiti shares pursuant and/or traceable to the Registration

16    Statement for the IPO.

17       79.     Plaintiff and the Class have sustained damages. The value of Ubiquiti common stock

18    has declined substantially subsequent to and due to defendants' violations.

19       80.     At the time of their purchases of Ubiquiti shares, plaintiff and other members of the

20    Class were without knowledge of the facts concerning the wrongful conduct alleged herein and

21    could not have reasonably discovered those facts prior to May 1, 2012. Less than one year has

22    elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon

23    which this complaint is based to the time that plaintiff filed this complaint. Less than three years

24    elapsed between the time that the securities upon which this Count is brought were offered to the

25    public and the time plaintiff filed this complaint.

26

27

28

**COUNT II**

**For Violation of §15 of the 1933 Act**
**Against Ubiquiti and the Officer and Director Defendants**

81.    Plaintiff repeats and realleges ¶¶1-31, 33-41, 45-48, 53-54, 60-67 and 70-80, by reference.

82.    This Count is brought pursuant to §15 of the 1933 Act against Ubiquiti, the Officer Defendants and the Director Defendants.

83.    The Officer Defendants and the Director Defendants each were control persons of Ubiquiti by virtue of their positions as a director and/or senior officer of Ubiquiti.  The Officer Defendants and the Director Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Ubiquiti. Ubiquiti controlled the Officer Defendants, the Director Defendants and all of Ubiquiti's employees.

84.    Defendants each were culpable participants in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

**COUNT III**

**For Violation of §10(b) of the 1934 Act and Rule 10b-5**
**Against Ubiquiti and the Officer Defendants**

85.    Plaintiff incorporates ¶¶1-84 by reference.

86.    During the Class Period, Ubiquiti and the Officer Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

87.    Ubiquiti and the Officer Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Ubiquiti common stock during the Class Period.

88.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Ubiquiti common stock. Plaintiff and the Class would not have purchased Ubiquiti common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by Ubiquiti's and the Officer Defendants' misleading statements.

## COUNT IV

### For Violation of §20(a) of the 1934 Act
### Against Ubiquiti and the Officer Defendants

89.     Plaintiff incorporates ¶¶1-88 by reference.

90.     Ubiquiti and the Officer Defendants acted as controlling persons of Ubiquiti within the meaning of §20(a) of the 1934 Act. By reason of their positions with the Company, and their ownership of Ubiquiti stock, the Officer Defendants had the power and authority to cause Ubiquiti to engage in the wrongful conduct complained of herein. Ubiquiti controlled the Officer Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.     Awarding plaintiff and the members of the Class damages and interest;

C.     Awarding plaintiff's reasonable costs, including attorneys' fees;

D.     Awarding rescission or a rescissory measure of damages; and

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 20 -

1   E.  Awarding such equitable/injunctive or other relief as the Court may deem just and

2 proper.

3            **JURY DEMAND**

4   Plaintiff hereby demands a trial by jury.

5 DATED: September 7, 2012     ROBBINS GELLER RUDMAN
                     &amp; DOWD LLP
6                  SHAWN A. WILLIAMS

7

8                  _Shawn A Williams/ LPS_
                    SHAWN A. WILLIAMS

9

10                Post Montgomery Center
                One Montgomery Street, Suite 1800
                San Francisco, CA 94104
11               Telephone: 415/288-4545
                415/288-4534 (fax)

12
                ROBBINS GELLER RUDMAN
13                &amp; DOWD LLP
                DARREN J. ROBBINS
14               DAVID C. WALTON
                CATHERINE J. KOWALEWSKI
15               655 West Broadway, Suite 1900
                San Diego, CA 92101
16               Telephone: 619/231-1058
                619/231-7423 (fax)

17
                LAW OFFICE OF ALFRED G.
18                YATES, JR., P.C.
                ALFRED G. YATES, JR.
19               GERALD L. RUTLEDGE
                519 Allegheny Building
20               429 Forbes Avenue
                Pittsburgh, PA 15219
21               Telephone: 412/391-5164
                412/471-1033 (fax)

22
                Attorneys for Plaintiff
23 S:\CptDraft\Securities\Cpt Ubiquiti Networks.doc

24

25

26

27

28

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Steven N. Bell ("Plaintiff") declares:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) in Ubiquiti Networks, Inc. that are the subject of this action:

| Transaction | Date | Amount | Price Per Share |
|---|---|---|---|

*See* Attached Schedule A.

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years period prior to the date of this Certification (list if any):


6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages directly related to the representation of the class) as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of September, 2012.

Steven N. Bell

## SCHEDULE A

UBIQUITI NETWORKS, INC. SECURITIES TRANSACTIONS FOR STEVEN N. BELL

| Buy / Sell | Trade Date | # of Shares | Price / Share |
|---|---|---|---|
| Buy | May 1, 2012 | 100 | $35.4599 |
| Buy | May 2, 2012 | 35 | $28.9998 |