ROBBINS GELLER RUDMAN
& DOWD LLP
CHRISTOPHER P. SEEFER (201197)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
chriss@rgrdlaw.com
– and –
DANIELLE S. MYERS (259916)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN N. BELL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>UBIQUITI NETWORKS, INC., et al.,<br><br>Defendants. | No. 12-cv-04677-YGR<br><br><u>CLASS ACTION</u><br><br>NOTICE OF MOTION AND MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL; MEMORANDUM OF LAW IN SUPPORT THEREOF<br><br>DATE: December 11, 2012<br>TIME: 2:00 p.m.<br>CTRM: Hon. Yvonne Gonzalez Rogers |

## NOTICE OF MOTION AND MOTION

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on December 11, 2012, at 2:00 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Yvonne Gonzalez Rogers, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, the Inter-Local Pension Fund GCC/IBT (the "Pension Fund") will move this Court pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), for an order: (1) consolidating the related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (2) appointing the Pension Fund as lead plaintiff; and (3) approving its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel. This Motion is made on the grounds that the Pension Fund is the "most adequate plaintiff" to serve as lead plaintiff. In support of this Motion, the Pension Fund respectfully submits herewith a Memorandum of Law and the Declaration of Danielle S. Myers ("Myers Decl.").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Presently pending in this District are two securities class action lawsuits (the "Actions") on behalf of all purchasers of Ubiquiti Networks, Inc. ("Ubiquiti" or the "Company") common stock between October 14, 2011 and August 9, 2012 (the "Class Period"), and/or who acquired shares of Ubiquiti common stock pursuant or traceable to its October 14, 2011 initial public offering ("IPO"), against Ubiquiti, the underwriters in the IPO, and certain of the Company's officers and/or directors for violations of the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "1934 Act").[1] In securities class actions, the PSLRA requires district courts to resolve

---

[1] The Actions are *Bell v. Ubiquiti Networks, Inc.*, No. 12-CV-4677, filed Sept. 7, 2012 and *Goecker v. Ubiquiti Networks, Inc.*, No. 12-CV-4801, filed Sept. 13, 2012.

consolidation prior to appointing lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).[2] Here, the Actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a); §IV.A., *infra*.

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The Pension Fund should be appointed as lead plaintiff because it: (1) timely filed this Motion; (2) to its counsel's knowledge, has the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii); §IV.B, *infra*. In addition, the Pension Fund's selection of Robbins Geller as lead counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); §IV.C, *infra*.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should consolidate *Bell v. Ubiquiti Networks, Inc.*, No. 12-CV-4677 and *Goecker v. Ubiquiti Networks, Inc.*, No. 12-CV-4801 pursuant to Rule 42(a) of the Federal Rules of Civil Procedure;

2. Whether the Court should appoint the Pension Fund as lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B); and

3. Whether the Court should approve of the Pension Fund's selection of Robbins Geller as lead counsel for the class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v).

## III. STATEMENT OF FACTS

Ubiquiti designs, manufactures and sells broadband wireless solutions worldwide. The Company offers a portfolio of wireless networking products and solutions, including systems, high performance radios, antennas and management tools, designed for wireless networking and other

---

[2] The PSLRA amended the 1933 and 1934 Acts in virtually identical respects. *Compare* 15 U.S.C. §77z-1(a)(3)(B) *with* 15 U.S.C. §78u-4(a)(3)(B). For continuity, only the 1934 Act is cited throughout.

applications in the unlicensed radio frequency ("RF") spectrum. The Company offers solutions that incorporate its RF technology, antenna design and firmware technologies, which it refers to as AirTechnologies.

The Complaint alleges that defendants issued materially false and misleading statements regarding the Company's business practices and financial results during the Class Period. Specifically, defendants failed to disclose negative trends in Ubiquiti's business, including widespread problems associated with counterfeit versions of its AirMax wireless gear being made available to the market. As a result of defendants' false statements, Ubiquiti stock traded at artificially inflated prices during the Class Period, reaching a high of $35 per share on May 1, 2012.

On or about October 14, 2011, Ubiquiti filed the Prospectus for its IPO, which forms part of the Registration Statement and which became effective on October 13, 2011. More than 7 million shares of Ubiquiti common stock were sold to the public at $15 per share, raising $105.6 million in gross proceeds for the Company and the selling shareholders.

On May 1, 2012, after announcing disappointing financial results, the Company acknowledged that Kozumi USA Corp., a former distributor of Ubiquiti's, had stolen source codes and proprietary designs for the Company's popular and profitable AirMax line of products and was engaged in a scheme to manufacture and distribute counterfeit Ubiquiti products in South America and other emerging markets in direct competition with the Company. After this news, Ubiquiti stock declined 17% on volume of more than 4 million shares. However, the stock continued to be artificially inflated as defendants assured investors that the Company had the matter contained and downplayed the effect the counterfeit activities would have on the Company's operations. Moreover, defendants concealed the widespread nature of the counterfeiting activities and the serious impact they would have on the Company's future results.

Thereafter, on August 9, 2012, Ubiquiti announced its fourth quarter fiscal 2012 financial results and announced disappointing guidance for the first quarter of fiscal 2013. Ubiquiti admitted that the distribution of the unauthorized copies of its communication gear was more widespread than

previously disclosed and would have a detrimental impact on the Company's future results. As a result of this news, Ubiquiti stock declined another 42% on volume of over 7.6 million shares.

During the Class Period, defendants knew, but concealed from the investing public:

(a) The true magnitude of the risks the Company faced from counterfeit goods. In 2011, former partners of Ubiquiti had stolen plans and manufactured and sold identical copies of the Company's popular and profitable AirMax products.

(b) The widespread nature and extent of the counterfeit operations and the impact the counterfeit activities would have on the Company's future operating results.

(c) The increased risks to the Company's operations due to its unique business model, whereby it relied exclusively upon distributors to sell its products to end customers.

(d) That the Company lacked the proper internal controls to prevent its product designs from being stolen and replicated.

As a result of defendants' materially false statements, Ubiquiti's stock traded at artificially inflated levels during the Class Period. However, after the truth leaked into the market, the Company's stock price collapsed, sending shares down over 75% from their Class Period high. These revelations, and the elimination of the artificial inflation from Ubiquiti's stock price, caused real economic loss to investors who purchased Ubiquiti common stock at artificially inflated prices during the Class Period.

## IV. ARGUMENT

### A. The Actions Should Be Consolidated

The Court may consolidate actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a). Here, the Actions each assert claims on behalf of purchasers of Ubiquiti common stock for alleged violations of the 1933 Act and the 1934 Act during the Class Period. The claims, Class Periods, defendants and factual allegations are virtually identical. Accordingly, the Actions should be consolidated.

### B. The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedures for the appointment of a lead plaintiff in "each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or the group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). The Pension Fund meets each of these requirements and should therefore be appointed as lead plaintiff.

#### 1. This Motion Is Timely

The notice published in this action on September 7, 2012 advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff within 60 days of September 7, 2012, or November 6, 2012. *See* Myers Decl., Ex. A. Because this motion is timely filed, the Pension Fund is entitled to be considered for appointment as lead plaintiff.

#### 2. The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Pension Fund expended more than $485,000 purchasing over 18,900 shares of Ubiquiti stock at artificially inflated prices as high as $32.06 per share and suffered harm of nearly $315,000 as the price of Ubiquiti stock declined. *See* Myers Decl., Ex. B. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest.

Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

**3. The Pension Fund Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure**

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); *Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy at the lead plaintiff stage).

The test of typicality is "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The adequacy requirement is met if no conflicts exist between the representative and class interests and the representative's attorneys are qualified, experienced and able to vigorously prosecute the action on behalf of the class. *See* Fed. R. Civ. P. 23(a)(4); *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003). The Pension Fund satisfies these requirements at this stage of the litigation.

The Pension Fund has submitted a sworn certification confirming its desire, willingness and ability to serve as lead plaintiff. *See* Myers Decl., Ex. B; *see also* Civil L.R. 3-7(c). Like all class members, the Pension Fund purchased Ubiquiti stock during the Class Period at allegedly inflated prices and suffered damages when defendants' misconduct came to light. *See* Myers Decl., Ex. B. The Pension Fund's substantial financial interest indicates it has the requisite incentive to vigorously represent the class's claims. *Id*. Moreover, the Pension Fund is not subject to unique defenses and is not aware of any conflicts between its claims and those asserted by the class. Finally, as discussed below, the Pension Fund has selected qualified counsel experienced in securities litigation.

The Pension Fund's common interests shared with the class, substantial financial interest in the litigation, and selection of qualified counsel demonstrate that the Pension Fund satisfies the Rule 23 inquiry at this stage.

**C. The Court Should Approve the Pension Fund's Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Cohen*, 586 F.3d 703, 711-12 (9th Cir. 2009); *Cavanaugh*, 306 F.3d at 732-35. The Pension Fund has selected Robbins Geller as lead counsel in this case.

Robbins Geller, a 180-lawyer firm with offices nationwide and in this District, is actively engaged in complex litigation, particularly securities litigation. *See* Myers Decl., Ex. C. District courts throughout the country, including this court, have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *Westley v. Oclaro, Inc.*, 2011 WL 4079178, at *3 (N.D. Cal. Sept. 12, 2011) (Chen, J.) (noting the "extensive prior experience" of Robbins Geller in prosecuting securities class actions and appointing it lead counsel); *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (Harmon, J.) (commenting that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"). As such, the Court may be assured that the members of the class will receive the highest caliber of legal representation from Robbins Geller if this Motion is granted. Accordingly, the Pension Fund's selection of counsel should be approved.

**V. CONCLUSION**

The Court should consolidate the Actions because they share numerous questions of law and fact. Furthermore, the Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Pension Fund respectfully requests that the Court appoint

it as Lead Plaintiff, approve its selection of counsel and grant such other relief as the Court may deem just and proper.

DATED: November 6, 2012

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
DANIELLE S. MYERS

s/ Danielle S. Myers
DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
CHRISTOPHER P. SEEFER
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 6, 2012.

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: dmyers@rgrdlaw.com

# Mailing Information for a Case 4:12-cv-04677-YGR

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com
- **Ignacio Evaristo Salceda**
  isalceda@wsgr.com,rlustan@wsgr.com
- **Christopher Paul Seefer**
  chriss@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,tcraig@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **David Conrad Walton**
  davew@rgrdlaw.com
- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Catherine J. Kowalewski**
Robbins Geller Rudman & Dowd LLP
655 W Broadway
Suite 1900
San Diego, CA 92101