1    ROBBINS GELLER RUDMAN
        & DOWD LLP
2    CHRISTOPHER P. SEEFER (201197)
     DANIEL J. PFEFFERBAUM (248631)
3    Post Montgomery Center
     One Montgomery Street, Suite 1800
4    San Francisco, CA 94104
     Telephone: 415/288-4545
5    415/288-4534 (fax)
     chriss@rgrdlaw.com
6    dpfefferbaum@rgrdlaw.com

7    LABATON SUCHAROW LLP
     JONATHAN GARDNER
8    MICHAEL P. CANTY
     ROGER W. YAMADA
9    140 Broadway
     New York, New York 10005
10   Telephone: 212/907-0700
     212/818-0477 (fax)
11   jgardner@labaton.com
     mcanty@labaton.com
12   ryamada@labaton.com

13   *Lead Counsel for Plaintiffs*

14

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17   In re UBIQUITI NETWORKS, INC.          )   MASTER FILE NO. 12-cv-04677-YGR
     SECURITIES LITIGATION                   )
18                                            )   CLASS ACTION
                                              )
19   ─────────────────────────────           )   LEAD PLAINTIFFS' NOTICE OF MOTION
                                              )   AND MOTION FOR PRELIMINARY
20   This Document Relates to:                )   APPROVAL OF PROPOSED CLASS
                                              )   ACTION SETTLEMENT AND
21      All Actions.                          )   MEMORANDUM OF POINTS AND
                                              )   AUTHORITIES IN SUPPORT THEREOF
22                                            )
                                              )   Date: August 22, 2017
23                                            )   Time: 2:00 p.m.
                                              )   Judge: The Hon. Yvonne Gonzalez Rogers
24                                            )   Oakland Courthouse, Courtroom 1, 4th Floor
                                              )
25   ─────────────────────────────           )

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 2

    A.    Description of the Action .......................................................................................... 3

    B.    Settlement Discussions ............................................................................................. 5

    C.    The Proposed Settlement .......................................................................................... 5

    D.    Proposed Schedule of Events .................................................................................... 6

ARGUMENT ......................................................................................................................... 7

I.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL ............................................ 7

    A.    The Settlement is the Result of a Thorough, Rigorous, and Arm's-Length Process ..................................................................................................................... 8

    B.    The Settlement Is Well Within the Range of Reasonableness .................................. 10

    C.    The Proposed Notice Program Satisfies Rules 23(e), Due Process, and the PSLRA Requirements ............................................................................................. 13

    D.    Proposed Plan of Allocation .................................................................................. 15

    E.    Anticipated Legal Fees, Litigation Expenses and Administrative Fees ................ 16

II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ..................................................................................................................... 17

    A.    Standards Applicable to Class Certification ........................................................... 17

    B.    The Settlement Class Meets the Requirements of Rule 23(a) ............................... 19

        1.    Rule 23(a) Numerosity ................................................................................ 19

        2.    Rule 23(a)(2):  Questions of Law or Fact Are Common ............................ 20

        3.    Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical ................................... 20

        4.    Rule 23(a)(4)  The Lead Plaintiffs Are Adequate ...................................... 21

    C.    The Settlement Class Meets the Requirements of Rule 23(b)(3) .......................... 22

        1.    Common Questions of Law or Fact Predominate ...................................... 22

        2.    A Class Action Is a Superior Method of Adjudication .............................. 22

CONCLUSION ..................................................................................................................... 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abbey v. Comput. Memories, Inc.*,
    634 F. Supp. 870 (N.D. Cal. 1986) ......................................................................12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................18, 22

*Arnold v. United Artists Theatre Circuit, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994) .........................................................19

*In re AT&T Corp. Sec. Litig.*,
    MDL No. 1399, 2005 U.S. Dist. LEXIS 46144 (D.N.J. Apr. 25, 2005) ................................21

*In re Bear Stearns Cos. Inc. Sec., Derivative, & ERISA Litig.*,
    No. 07-cv-10453, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ......................................21

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ......................................................20

*Ching v. Siemens Indus., Inc.*,
    No. 11-cv-4838 MEJ, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013).....................14

*In re Comput. Memories Sec. Litig.*,
    111 F.R.D. 675 (N.D. Cal. 1986).........................................................20

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ........................................................18, 19, 22

*Desai v. Deutsche Bank Sec. Ltd.*,
    573 F.3d 931 (9th Cir. 2009) ........................................................18, 23

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    No. MDL-901, 1993 WL 144861 (C.D. Cal. Feb. 26, 1993) ......................................22

*Grant v. Capital Mgmt. Servs., L.P.*,
    No. 10-cv-2471-WQH (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013).....................7, 8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................18, 20, 22

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ........................................................19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Howell v. JBI, Inc.*,
    298 F.R.D. 649 (D. Nev. 2014)..................................................................................19

*In re HP Sec. Litig.*,
    No. 12-cv-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20, 2015)....................13

*Int'l Bhd of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)....................11

*Jaffe v. Morgan Stanley & Co., Inc.*,
    No. 06-cv-3903 (TEH), 2008 WL 346417 (N.D. Cal. Feb. 7, 2008).......................18

*In re Juniper Networks, Inc. Sec. Litig.*,
    264 F.R.D. 584 (N.D. Cal. 2009).............................................................................20

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ....................................................................................13

*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015).............................................................................11

*Linney v. Cellular Alaska P'ship*,
    No. 96-cv-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) *aff'd*, 151
    F.3d 1234 (9th Cir. 1998) ..........................................................................................8

*Lo v. Oxnard European Motors, LLC*,
    No. 11-cv-1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) .........12

*McPhail v. First Command Fin. Planning, Inc.*,
    247 F.R.D. 598 (S.D. Cal. 2007) .............................................................................23

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .................11

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ....................................................................................21

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ......................................................................................6

*Nisch v. Dreamworks Animation Skg Inc.*,
    No 14-cv-04062-LHK, 2017 U.S. Dist. LEXIS 29920 (N.D. Cal. Mar. 2,
    2017) .........................................................................................................................14

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015)................................................................................7

*In re NVIDIA Corp. Derivative Litig.*,
    06-cv-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...............10

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................10, 11

*Orvis v. Spokane Cty*,
    281 F.R.D. 469 (E.D. Wash. 2012)........................................................................12

*Perez-Funez v. Dist. Dir., I.N.S*,
    611 F. Supp. 990 (C.D. Cal. 1984) ........................................................................19

*In re Portal Software, Inc. Sec. Litig.*,
    No. 03-cv-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .................8

*Sandoval v. Tharaldson Emp. Mgmt.*,
    No. 08-cv-00482-VAP, 2009 WL 3877203 (C.D. Cal. Nov. 17, 2009)................18

*Satchell v. Fed. Express Corp.*,
    No. 03-cv-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007).............................8

*In re Syncor ERISA Litig.*,
    227 F.R.D. 338 (C.D. Cal. 2005) ..........................................................................20

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ................................................................................7

*In re THQ Inc. Sec. Litig.*,
    No. 00-cv-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) .........18

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. 07-cv-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009)...........21

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    MDL No. 551, 1988 WL 158947 (W.D. Wash. July 28, 1988) ...........................11

*West v. Circle K Stores, Inc.*,
    No. 04-cv-438 WBS (GGH), 2006 WL 1652598 (E.D. Cal. June 13, 2006) ....................7, 10

*Young v. Polo Retail LLC*,
    No. 02-cv-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006)....................7

*In re Zynga Inc. Sec. Litig.*,
    No. 12-cv-04007 (JSC) 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ...........7, 8, 9

**Docketed Cases**

*Jaffe v. Household Int'l, Inc.*,
    No. 02-C-05893 (N.D. Ill.) ....................................................................................10

1

2

*Nathanson v. Polycom, Inc., et al.,*
    No. 13-3476 (N.D. Cal. Feb. 9, 2016) ...................................................13

3

*In re Violin Memory Inc. Sec. Litig.,*
    13-CV-05486 (N.D. Cal. Feb. 23, 2016) ...............................................13

4

**Statutes**

5

15 U.S.C. §78u-4(a)(7)(A)-(F)...................................................................14

6

**Rules**

7

Fed. R. Civ. P. 23 ............................................................................. *passim*

8

9

Fed. R. Civ. P. 23(a) ...............................................................2, 18, 19

10

Fed. R. Civ. P. 23(a)(1) ...................................................................19

11

Fed. R. Civ. P. 23(a)(2) ...................................................................20

12

Fed. R. Civ. P. 23(a)(3) ...................................................................20

13

Fed. R. Civ. P. 23(a)(4) ...............................................................21, 22

14

Fed. R. Civ. P. 23(b) .......................................................................18

15

Fed. R. Civ. P. 23(b)(3).............................................................2, 18, 22

16

Fed. R. Civ. P. 23(b)(3)(A)-(D) .......................................................23

17

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................13

18

Fed. R. Civ. P. 23(e) .........................................................................2

19

Fed. R. Civ. P. 26 .............................................................................4

20

21

22

23

24

25

26

27

28

Master File No. 12-cv-04677-YGR                                                    v
Lead Plaintiffs' Notice of Motion and Motion
for Preliminary Approval of Proposed Class Action Settlement

1

## NOTICE OF MOTION

2

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on August 22, 2017 at 2:00 p.m., or as soon thereafter as

4 they may be heard, Lead Plaintiffs Bristol County Retirement System and Inter-Local Pension

5 Fund GCC/IBT, on behalf of themselves and all members of the proposed settlement class,

6 hereby respectfully move this Court for an Order, pursuant to Rule 23 of the Federal Rules of

7 Civil Procedure:  (i) granting preliminary approval of the proposed Settlement; (ii) preliminarily

8 certifying the Settlement Class for settlement purposes only; (iii) preliminarily appointing Lead

9 Plaintiffs as Class Representatives and Lead Counsel as Class Counsel for the settlement class;

10 (iv) approving the form and substance of the proposed long-form notice, proof of claim and

11 release form, and publication notice, as well as the proposed methods of disseminating notice to

12 the settlement class; (v) scheduling a date for the final settlement hearing; and (vi) such other and

13 further relief as this Court deems just and proper.

14          This motion is supported by the following memorandum of points and authorities, the

15 accompanying Declaration of Jonathan Gardner ("Gardner Decl.") and the exhibits attached

16 thereto, including the Stipulation and Agreement of Settlement, dated as of August 4, 2017

17 ("Stipulation"), which is annexed as Exhibit 1.[1]

18          A proposed Order Granting Preliminary Approval of Class Action Settlement, Approving

19 Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement

20 ("Preliminary Approval Order"), with annexed exhibits, which was negotiated by the Parties, is

21 also submitted herewith.

22

## STATEMENT OF ISSUES TO BE DECIDED

23          (1)      Whether the Court should grant preliminary approval of the proposed
                     Settlement on the terms set forth in the Stipulation;
24

25          (2)      Whether the Court should preliminarily certify, for purposes of Settlement
                     only, a class of all persons and entities that that purchased or acquired the
26                   publicly traded common stock of Ubiquiti Networks, Inc. pursuant and/or

27

28 [1] All capitalized terms used herein are defined in the Stipulation and have the same meanings as
set forth therein.  All references to "Ex. ___" herein are references to exhibits attached to the
Gardner Declaration.

traceable to Ubiquiti Networks, Inc.'s initial public offering on or about October 14, 2011 (the "Settlement Class");

(3)     Whether the Court should appoint Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel for the Settlement Class;

(4)     Whether the Court should approve the form and substance of the proposed Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Proof of Claim"), and the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), appended as Exhibits A-1 through A-3 to the proposed Preliminary Approval Order, as well as the manner of notifying the Settlement Class of the Settlement; and

(5)     Whether the Court should schedule a hearing to determine whether the Settlement and Plan of Allocation should be finally approved and to consider Lead Counsel's application for an award of attorneys' fees and payment of expenses (the "Settlement Hearing").

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Bristol County Retirement System ("Bristol County") and Inter-Local Pension Fund GCC/IBT ("Inter-Local" and, together with Bristol County, "Lead Plaintiffs"), through Lead Counsel Labaton Sucharow LLP ("Labaton Sucharow") and Robbins Gellar Rudman & Dowd LLP ("Robbins Geller"), submit this memorandum of points and authorities in support of their motion, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for preliminary approval of a proposed class action settlement (the "Settlement") in the amount of $6,800,000 in cash, pursuant to the terms as set forth in the Stipulation and Agreement of Settlement, dated as of August 4, 2017.  Lead Plaintiffs entered into the Stipulation with each of the defendants in the Action: Ubiquiti Networks, Inc. ("Ubiquiti" or the "Company"), and Robert J. Pera ("Pera"), John Ritchie ("Ritchie"), Peter Y. Chung, Christopher J. Crespi, Charles J. Fitzgerald, John L. Ocampo and Robert M. Van Buskirk (the "Individual Defendants"), and UBS Securities LLC ("UBS"), Deutsche Bank Securities Inc. ("Deutsche Bank"), Raymond James & Associates, Inc. ("Raymond James") and Raymond James & Associates, Inc. and KeyBanc Capital Markets Inc. (formerly known as Pacific Crest Securities LLC)  (collectively, the "Underwriter Defendants"

Master File No. 12-cv-04677-YGR
Lead Plaintiffs' Notice of Motion and Motion
for Preliminary Approval of Proposed Class Action Settlement                                      2

and with Ubiquiti and the Individual Defendants, the "Defendants").

Lead Plaintiffs respectfully submit that the Settlement is an excellent result for the Settlement Class and should be preliminarily approved by the Court.  The decision to settle was informed by a comprehensive investigation, dispositive motion practice, including an appeal to the U.S. Court of Appeals for the Ninth Circuit, an exchange of core documents prior to commencement of settlement discussions, and intensive arm's-length negotiations before an experienced mediator, Robert A. Meyer.[2]  For the reasons stated herein, Lead Plaintiffs respectfully request that the Court grant this motion.

### A.    Description of the Action

In September of 2012, two securities class action complaints were filed alleging that Defendants violated the federal securities laws.  On November 6, 2012, motions to consolidate the actions, to appoint a lead plaintiff and to approve lead plaintiff's selection of counsel were filed by four separate movants.  ECF Nos. 8, 9, 19, 23.  On November 30, 2012, the Court issued an order consolidating the actions, appointing Inter-Local and Bristol County as Lead Plaintiffs and approving Plaintiffs' selection of Labaton Sucharow and Robbins Gellar as Lead Counsel. ECF No. 30.

On January 29, 2013, Plaintiffs filed the Consolidated Amended Complaint for Violation of the Federal Securities Laws, alleging violations of §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Act"), and §§10(b) and 20(a) of the Securities and Exchange Act of 1934 ("1934 Act"), arising from allegedly false statements in the Company's Registration Statement for the Company's October 14, 2011 initial public offering ("IPO") and thereafter.  ECF No. 54.

Defendants vigorously denied the allegations, moving to dismiss on March 26, 2013. ECF Nos. 56, 57.  On March 26, 2014, the Court granted Defendants' motion with leave to amend.  ECF No. 75.  On April 15, 2014, Plaintiffs filed a notice of intent not to file an amended complaint, and on April 16, 2014, the Court issued an order dismissing the case with prejudice. ECF Nos. 78-79.

---

[2] Robert A. Meyer, Esq. is a partner at Loeb & Loeb in Los Angeles, California and serves as a mediator of complex actions, including securities class actions with JAMS.

1    On September 24, 2014, Plaintiffs appealed to the United States Court of Appeals for the

2    Ninth Circuit.   On October 24, 2016, the Ninth Circuit issued an order affirming in part and

3    reversing in part the District Court's March 26, 2014 order.  *See* ECF No. 84.  The Ninth Circuit

4    affirmed the District Court's dismissal of the §§10(b) and 20(a) claims under the 1934 Act and

5    reversed the dismissal of the §§11 and 15 claims under the 1933 Act, holding that Plaintiffs had

6    sufficiently alleged that "the registration statement misrepresented the true extent of

7    counterfeiting and the misrepresentation would have misled a reasonable investor."  *Id.* at 3.

8    At the direction of this Court, on January 30, 2017, Lead Plaintiffs filed a Consolidated

9    Second Amended Complaint for Violations of the Federal Securities Laws ("SAC") asserting

10   only those Securities Act claims which remained upon remand.  ECF No. 96.  The SAC alleged,

11   among other things, that with respect to the Securities Act claims, the registration statement

12   issued in connection with Ubiquiti's October 14, 2011 initial public offering, falsely represented

13   that the sale of counterfeit products was just a risk that could adversely affect Ubiquiti's business

14   and failed to disclose an active international counterfeiting scheme that was adversely impacting

15   Ubiquiti's business.  SAC ¶¶100-07.

16   The Complaint was based upon the extensive factual investigation of Lead Counsel,

17   which included, among other things, the review and analysis of:  (i) documents filed publicly by

18   the Company with the Securities & Exchange Commission ("SEC"); (ii) publicly available

19   information, including press releases, news articles, and other public statements issued by or

20   concerning the Company and Defendants; (iii) research reports issued by financial analysts

21   concerning the Company; (iv) pleadings and documents filed in the Company's litigation against

22   Kozumi USA Corp. ("Kozumi"); and (v) information provided by former Ubiquiti distributors.

23   In addition, Lead Counsel consulted with experts on damages issues.

24   On February 13, 2017, Defendants filed and served answers to the Complaint.  ECF Nos.

25   97, 99.

26   During the Parties' Fed. R. Civ. P. 26 conference, counsel for Defendants proposed that

27   the Parties explore an early mediation.  ECF No. 106.  Plaintiffs agreed on the condition that

28

1    there would be an exchange of core documents, and formal discovery was suspended.  ECF No.

2    104.  Thereafter, Lead Plaintiffs reviewed approximately 60,000 pages of documents produced

3    by Defendants in connection with the mediation, including emails from the accounts of Pera,

4    Ritchie and Benjamin Moore, Vice President of Business Department at Ubiquiti; documents

5    from the Kozumi litigation; drafts of registration statements for the Company's October 14, 2011

6    IPO; road show presentations; underwriter memoranda; due diligence materials; board minutes;

7    financial documents; and other documents related to counterfeiting Ubiquiti's products.

8          **B.**      **Settlement Discussions**

9          Pursuant to a Scheduling Order directing the Parties to participate in private mediation

10   and to report the status of the mediation to the Court on May 19, 2017, Defendants and Lead

11   Plaintiffs engaged Mr. Meyer, a respected mediator with extensive experience in mediating

12   complex securities class actions.  The Parties attended private mediation with Mr. Meyer at

13   JAMS in New York City on May 15, 2017, but were unable to reach an agreement. *See* ECF No.

14   108. Settlement discussions through Mr. Meyer remained ongoing after the mediation session.

15   On June 21, 2017, after continued dialogue, Mr. Meyer made a mediator's proposal for a

16   recommended settlement amount. The Parties agreed to the mediator's proposal on June 22,

17   2017.

18         **C.**      **The Proposed Settlement**

19         Pursuant to the proposed Settlement, Defendants shall pay, or cause to be paid, the

20   Settlement Amount into an escrow account within twenty (20) calendar days after (i) entry of the

21   Preliminary Approval Order, and (ii) Lead Counsel's provision to Latham & Watkins  LLP of

22   payment instructions.  In exchange for this payment, upon the Effective Date of the Settlement,

23   Lead Plaintiffs and the Settlement Class will release all Released Claims against each and every

24   one of the Released Defendant Parties and shall forever be barred and enjoined from

25   commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against

26   any and all of the Released Defendant Parties.  The definition of Released Claims and Unknown

27   Claims has been tailored to release only claims that relate to the purchase or acquisition of

28

Master File No. 12-cv-04677-YGR                                                                                    5
Lead Plaintiffs' Notice of Motion and Motion
for Preliminary Approval of Proposed Class Action Settlement

Ubiquiti publicly traded common stock during the Class Period that were raised or could have been raised by Class Members in the Action. *See* Stipulation ¶¶ 1(z), 4.

### D.   Proposed Schedule of Events

Lead Plaintiffs respectfully propose the following schedule for the various Settlement-related events:

| | |
|---|---|
| Deadline for mailing individual Notices and Proofs of Claim (the "Notice Date") | ***10 business days after entry of the Preliminary Approval Order*** |
| Deadline for publication of Summary Notice in *The Wall Street Journal* and transmission over *Business Wire* | ***Within 14 calendar days of the Notice Date*** |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses | ***No later than 14 calendar days before the deadline for filing objections*** |
| Deadline for submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, or the request for attorneys' fees and expenses | ***No later than 60 calendar days after the Notice Date*** |
| Deadline for filing reply papers in support of the Settlement, the Plan of Allocation, and/or Lead Counsel's application for an award of attorneys' fees and expenses | ***No later than 14 calendar days before the Settlement Hearing*** |
| Settlement Hearing | ***At the Court's convenience, but no fewer than 100 calendar days after the date of the entry of the Preliminary Approval Order*** |
| Deadline for submission of Proofs of Claim | ***Postmarked or electronically submitted no later than 14 calendar days before the Settlement Hearing*** |

The foregoing schedule is similar to those used and approved by numerous courts in class action settlements and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).

MASTER FILE NO. 12-CV-04677-YGR
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

6

**ARGUMENT**

**I.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions.  *See, e.g., In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.") (citation omitted); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *2 (S.D. Cal. Dec. 11, 2013) ("Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation.") (citation and internal quotations omitted).

Federal Rule of Civil Procedure 23 requires court approval for any settlement of a class action.  Approval of class action settlements normally proceeds in two stages:  (i) preliminary approval, followed by notice to the class; and (ii) final approval.  *See, e.g.,Noll v. eBay, Inc.*, 309 F.R.D. 593, 602 (N.D. Cal. 2015); *West v. Circle K Stores, Inc.*, No. 04-cv-438 WBS (GGH), 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006); Manual for Complex Litigation (Fourth) §13.14 (2004).  By this motion, Lead Plaintiffs request that the Court take the first step in the approval process:  preliminary approval of the Settlement.

The preliminary approval standard involves "both a procedural and a substantive component."  *Young v. Polo Retail, LLC,* No. 02-cv-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).  As the court in *Young* explained:

> If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing….

*Id*. (citing Manual for Complex Litigation (Second) § 30.44 (1985)) (alterations in original); *see also In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007 (JSC) 2015 WL 6471171, at *8-11 (N.D. Cal. Oct. 27, 2015) (granting preliminary approval after finding proposed settlement was "non-collusive," "lacks obvious deficiencies," and was "within the range of possible approval").

A court "need not conduct a full settlement fairness appraisal before granting preliminary

1   approval." *Grant*, 2013 WL 6499698, at *5 (citation and internal quotations omitted). "The

2   Court cannot fully assess all of [the] fairness factors until after the final approval hearing; thus,

3   'a full fairness analysis is unnecessary at this stage.' Instead, 'the settlement need only be

4   potentially fair, as the Court will make a final determination of its adequacy at the hearing on

5   Final Approval after such time as any party has had a chance to object and/or opt out.'"[3] *Zynga*

6   *Inc.*, 2015 WL 6471171, at *8 (internal citations omitted). Applying the standards set forth

7   above, the Settlement should be preliminarily approved.

        **A.**     **The Settlement is the Result of a Thorough, Rigorous, and Arm's-Length**
                **Process**

10         There is an initial presumption that a proposed settlement is fair and reasonable when it is

11   the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-

12   5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *see also Linney v. Cellular*

13   *Alaska P'ship*, No. 96-cv-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) *aff'd*, 151

14   F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact

15   that the settlement agreement was reached in arm's length negotiations, after relevant discovery

16   had taken place create a presumption that the agreement is fair."). Here, the Parties have

17   vigorously investigated and litigated the Action since its inception and the Settlement was

18   achieved only after a thorough arm's-length mediation session under the supervision of an

19   experienced mediator with considerable knowledge and expertise in the field of federal securities

20   law, including shareholder class actions under the Securities Act and Securities Exchange Act.

21         Courts have recognized that "[t]he assistance of an experienced mediator in the

22   settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*,

23   No. 03-cv-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). Here, mediator Robert A.

---

[3] In connection with final approval of the Settlement, the Court will be asked to review the
following factors identified by the Ninth Circuit: "(1) the strength of the plaintiffs' case; (2) the
risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining
class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of
discovery completed and the stage of the proceedings; (6) the experience and views of counsel;
(7) the presence of a governmental participant; and (8) the reaction of the class members of the
proposed settlement." *Zynga Inc.*, 2015 WL 6471171, at *8 (citing *In re Bluetooth Headset
Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

Meyer played an active role in addressing the relevant issues with the Parties and bringing about the Settlement.  Indeed, "[t]he use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'"  *Zynga, Inc.*, 2015 WL 6471171, at *9 (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261 (SBA), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)).

Before and during the mediation session, the strengths and weaknesses of Lead Plaintiffs' and Defendants' respective claims and defenses were fully explored by the Parties.  Lead Counsel developed a thorough understanding of the facts of the case and merits of the claims through their analysis of, *inter alia*:  (i) publicly available information regarding the Company; (ii) substantive briefing on Defendants' motion to dismiss and Lead Plaintiff's appeal to the Ninth Circuit; (iii) the informal production in advance of mediation of approximately 60,000 pages of documents by Defendants, including emails from the accounts of Pera, Ritchie and Benjamin Moore, Vice President of Business Department at Ubiquiti; productions from the Kozumi litigation; drafts of registration statements for the Company's October 14, 2011 IPO; road show presentations; underwriter memoranda; due diligence materials; board minutes; financial documents; and other documents related to counterfeiting Ubiquiti's products; (iv) frank discussions with Defendants' Counsel during the mediation process; and (v) consultation with damages experts.  With an informed understanding, the Lead Plaintiffs agreed to the Settlement.  There has been no collusion.

Additionally, throughout the Action, Lead Plaintiffs had the benefit of the advice of knowledgeable counsel with extensive experience in shareholder class action litigation and securities fraud cases.  Labaton Sucharow and Robbins Geller are among the most experienced and skilled firms in the securities litigation field, and have long and successful track records in such cases.  *See* Exs. 2, 3.  Labaton Sucharow has served as lead counsel in a number of high profile matters, for example: *In re Am. Int'l Grp, Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) (representing the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund and reaching settlements of $1 billion); *In re*

Master File No. 12-cv-04677-YGR                                                                    9
Lead Plaintiffs' Notice of Motion and Motion
for Preliminary Approval of Proposed Class Action Settlement

1   *HealthSouth Corp. Sec. Litig.*, No. 03-1500 (N.D. Ala.) (representing the State of Michigan

2   Retirement System, New Mexico State Investment Council, and the New Mexico Educational

3   Retirement Board and securing settlements of more than $600 million); and *In re Countrywide*

4   *Sec. Litig.*, No. 07-5295 (C.D. Cal.) (representing the New York State and New York City

5   Pension Funds and reaching settlements of more than $600 million).   Robbins Geller has also

6   served as lead counsel in a number of high profile matters, for example:   *Jaffe v. Household Int'l*,

7   *Inc.*, No. 02-C-05893 (N.D. Ill.) (representing Glickenhaus & Co., PACE Industry Union

8   Management Pension Fund and International Union of Operating Engineers Local No. 132

9   Pension Plan as sole lead counsel after 14 years of litigation, including a six-week jury trial in

10  2009 that resulted in verdict in favor of the Class obtained a $1.575 billion settlement for the

11  Class); *In re Enron Corp. Sec. Litig.*, No. 01-3624 (S.D. Tex.) (representing The Regents of the

12  University of California and reaching settlements in excess of $7.2 billion); *In re UnitedHealth*

13  *Grp. PSLRA Litig.*, No. 06-1691 (D. Minn.) (representing the California Public Employees'

14  Retirement System and securing settlements of more than $925 million).

15        Courts give considerable weight to the opinion of experienced and informed counsel.

16  *See, e.g., In re NVIDIA Corp. Derivative Litig.*, 06-cv-06110-SBA (JCS), 2008 WL 5382544, at

17  *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that

18  settlement is in the best interest of those affected by the settlement.").   In *In re Omnivision*

19  *Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), the court held that the

20  recommendation of counsel weighed in favor of settlement given their familiarity with the

21  dispute and their significant experience in securities litigation.   *Id.*   Lead Counsel likewise have a

22  thorough understanding of the merits of the Action and extensive experience in securities fraud

23  litigation in particular.   Lead Counsel's belief in the fairness and reasonableness of the

24  Settlement warrants a presumption of reasonableness.

25        **B.        The Settlement Is Well Within the Range of Reasonableness**

26        "[A]t this preliminary approval stage, the court need only 'determine whether the

27  proposed settlement is within the range of possible approval.'"   *West*, 2006 WL 1652598, at *11

28

1   (citation omitted).  This Settlement is well within the range of reasonableness for several reasons.

2       Principally, the $6,800,000 Settlement is a significant portion of Lead Plaintiff's

3   consulting expert's estimate of aggregate damages, if liability were to be established.  Estimated

4   damages totaled approximately $19 million, thus, the $6,800,000 Settlement represents a

5   recovery of approximately 35%.  Indeed, the 35% recovery of estimated damages is nearly five

6   times greater than the median recovery of 7.4% of estimated damages for Section 11 and/or

7   Section 12(a)(2) claims that settled between 1996-2016, according to a recent Cornerstone

8   Research Study.[4]  Defendants maintained that no damages could be established.

9       Courts have generally approved settlements in cases since the passage of the Private

10  Securities Litigation Reform Act of 1995 ("PSLRA") that recover a far smaller percentage of

11  maximum damages.  *See, e.g. McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-

12  JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement

13  recovering 7% of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at

14  1042 ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs

15  was "higher than the median percentage of investor losses recovered in recent shareholder class

16  action settlements") (citation omitted); *Int'l Bhd of Elec. Workers Local 697 Pension Fund v.*

17  *Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct.

18  19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages

19  that plaintiffs believe could be recovered at trial and noting that the amount is within the median

20  recovery in securities class actions settled in the last few years).

21      The Settlement also represents a prompt and substantial tangible recovery, without the

22  considerable risk, expense, and delay of prevailing on class certification, discovery, summary

23  judgment motions, trial, and post-trial litigation.  *See, e.g.*, *In re Linkedin User Privacy Litig.*,

24  309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally unless the settlement is clearly inadequate, its

25  acceptance and approval are preferable to lengthy and expensive litigation with uncertain

26  results.") (citation omitted); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551, 1988

27

28  [4]    *See* Ex. 4, Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2016 Review and Analysis*, at 11, Fig. 10 (Cornerstone Research 2017).

MASTER FILE NO. 12-CV-04677-YGR
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

11

1  WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding settlement to be in the "best interests of

2  the class . . . before it is subjected further to the vagaries of litigation").  While Lead Plaintiffs

3  believe they could have succeeded in establishing each of the elements of their securities claims,

4  they faced considerable obstacles in continuing the Action.

5      If the case were to proceed, Lead Plaintiffs would have to respond to Defendants'

6  anticipated motion for summary judgment directed to both liability and damages issues.  Among

7  other things, Defendants would likely assert that the IPO Registration Statement did not contain

8  any materially false and misleading statements or omissions.  Defendants would also likely argue

9  that the purchases of Ubiquiti common stock were not traceable to the Registration Statement

10  because approximately 26,000 pre-IPO shares were outstanding and tradable as of the IPO.  *See*

11  *Abbey v. Comput. Memories, Inc.*, 634 F. Supp. 870, 876 (N.D. Cal. 1986) (granting summary

12  judgment in favor of defendants based on affidavits confirming that shares at issue in Section 11

13  claim were commingled with other pre-existing shares, thereby making tracing "impossible").

14  Defendants would also likely argue that other factors caused the decline in Ubiquiti's stock price.

15  Leaving these challenges aside, the trial of the claims would be complex and long, and even a

16  favorable verdict for Lead Plaintiffs would spur a lengthy post-trial and appellate process.

17      Accordingly, in light of the substantial risks and expense of continued litigation, and

18  compared to the certain and prompt recovery of $6,800,000, the Settlement is an excellent result

19  that is well within the range of reasonableness.  *See, e.g., Orvis v. Spokane Cty*, 281 F.R.D. 469,

20  475 (E.D. Wash. 2012) ("the proposed benefit to class members appears to the Court to be within

21  the range of fair and reasonable compensation given the uncertain outcome of the legal

22  arguments and the risks and probable delay for Plaintiff and class members if litigation were to

23  proceed toward trial."); *Lo v. Oxnard European Motors, LLC*, No. 11-cv-1009 JLS (MDD), 2011

24  WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that

25  "'[c]onsidering the potential risks and expenses associated with continued prosecution of the

26  Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of

27  recovery through continued litigation,' the Court finds that, on balance, the proposed settlement

28

Master File No. 12-cv-04677-YGR                                                    12
Lead Plaintiffs' Notice of Motion and Motion
for Preliminary Approval of Proposed Class Action Settlement

is fair, reasonable, and adequate") (alteration in original) (citation omitted).

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement.

### C.   The Proposed Notice Program Satisfies Rules 23(e), Due Process, and the PSLRA Requirements

Lead Counsel proposes that notice be given to the Settlement Class in the form of the mailed Notice and published Summary Notice, attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order.  Notice to the Settlement Class in the form and in the manner set forth in the proposed Preliminary Approval Order will fulfill the requirements of due process and comply with the Federal Rules of Civil Procedure and the PSLRA.  Lead Counsel has also reviewed the Court's orders and approved notices in *Nathanson v. Polycom, Inc., et al.*, No. 13-3476 (N.D. Cal. Feb. 9, 2016) and *In re Violin Memory Inc. Sec. Litig.*, 13-CV-05486 (N.D. Cal. Feb. 23, 2016) for guidance in drafting the proposed notice packet.

Notice must be given to class members in the most practicable manner under the circumstances and must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)); *see also* Fed. R. Civ. P. 23(c)(2)(B).  Lead Plaintiffs propose to give Settlement Class Members notice in two ways:  (i) by first-class mailing of the long-form Notice, addressed to all Settlement Class Members who can reasonably be identified and located; and (ii) by publication of the Summary Notice in *The Wall Street Journal* and its transmission over *Business Wire*.  *See In re HP Sec. Litig.*, No. 12-cv-05980-CRB, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding the procedures for notice, including mailing individual notice and publication notice satisfy Rule 23, the PSLRA, and constitute the best notice practicable).  Neither Defendants, Lead Counsel, nor the Claims Administrator have access to potential Settlement Class Members' email addresses for dissemination of the Notice, however, the Notices will be posted on the website for the Settlement and Lead Counsel's website.

The form and substance of the notice program are sufficient.  The proposed forms of

MASTER FILE NO. 12-CV-04677-YGR
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

13

1   notice describe the terms of the Settlement and the Settlement Class' recovery; the

2   considerations that caused Lead Plaintiffs and Lead Counsel to conclude that the Settlement is

3   fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought;

4   the procedure for requesting exclusion from the Settlement Class;[5] the procedure for objecting to

5   the Settlement; the procedure for participating in the Settlement; the proposed Plan of

6   Allocation; and the date and place of the Settlement Hearing.  *See Ching v. Siemens Indus., Inc*.,

7   No. 11-cv-4838 MEJ, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013) (approving notice that

8   "adequately describes the nature of the action, summarizes the terms of the settlement, identifies

9   the class and provides instruction on how to opt out and object, and sets forth the proposed fees

10  and expenses to be paid to Plaintiff's counsel and the settlement administrator in clear,

11  understandable language").

12          The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*,

13  stating: (i) the amount of the Settlement determined in the aggregate and on an average per share

14  basis; (ii) that the Parties do not agree on the average amount of damages per share that would be

15  recoverable in the event Lead Plaintiffs prevailed; (iii) that Lead Counsel intend to make an

16  application for an award of attorneys' fees and expenses (including the amount of such fees and

17  expenses determined on an average per share basis), and a brief explanation of the fees and

18  expenses sought; (iv) the name, telephone number, and address of one or more representatives of

19  counsel for the Settlement Class who will be available to answer questions concerning any

20  matter contained in the Notice; and (v) the reasons why the Parties are proposing the Settlement.

21  *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).  The proposed Notice contains all of the information required

22  by the PSLRA.[6]

23

24  _____
    [5] Ubiquiti may terminate the Settlement if a certain threshold of exclusion requests is received,
    pursuant to the Parties' Confidential Supplemental Agreement Regarding Requests for

25  Exclusion, dated August 4, 2017.  *See* Stipulation ¶ 40.  The Supplemental Agreement has not
    been filed with the Court given the confidential nature of the Termination Threshold.  *See, e.g.,*

26  *Nisch v. Dreamworks Animation Skg Inc*., No 14-cv-04062-LHK, 2017 U.S. Dist. LEXIS 29920,
    at *8-9 (N.D. Cal. Mar.  2, 2017) (granting motion to seal supplemental agreement and noting

27  reasons to maintain confidentiality).  However, the Supplemental Agreement can be provided to
    the Court *in camera* at the hearing on the instant motion.

28  [6] As set forth in the Notice, the average recovery per allegedly damaged share of publicly traded
    common stock of Ubiquiti would be $1.00 per share before deduction of Court-approved fees

The Notices will, when mailed and published as provided for in the Preliminary Approval Order submitted herewith, fairly apprise Settlement Class Members of the Settlement and their options with respect thereto, and fully satisfy all due process requirements.

Lead Counsel also propose that the Court appoint The Garden City Group ("GCG") as the Claims Administrator for the Settlement in order to provide all notices approved by the Court to Settlement Class Members, to process Claim Forms, and to administer the Settlement.  GCG is a recognized leader in legal administration services for class action settlements and legal noticing programs in the country.  *See* Ex. 5.  For 30 years, GCG has administered some of the largest class actions of all time.  *Id*.  In particular, GCG has successfully handled the notice and administration of some of the largest and most complicated securities class actions, including the $6.19 billion settlement in the *WorldCom* securities litigation and the $2.2 billion settlement in the *Nortel I* and *II* securities litigations, among many others.  *Id*.  GCG's in-house staff includes more than 100 former attorneys and a staff members who have or had licenses and certifications in disciplines germane to class action administration, such as CPAs, CFAs, and Series 3, 4, and 7 qualifications.  *Id*.

### D.     Proposed Plan of Allocation

At the Settlement Hearing, the Court will be asked to approve the proposed Plan of Allocation for the Settlement proceeds, which is reported in full in the Notice.  The Plan of Allocation was drafted with the assistance of Lead Plaintiffs' consulting damages expert, based on the statutory formula for damages in the 1933 Act.

Individual claimants' recoveries will depend upon when they bought Ubiquiti stock and whether they bought, sold, or held the stock after the Class Period.  Eligible claimants will recover their proportioned "*pro rata*" amount of the Net Settlement Fund based on their "Recognized Loss," as set forth in the Plan of Allocation.  The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by Claimants in their claim forms.  Because most securities are held in "street name" by the brokers

---

and expenses, such as attorneys' fees and expenses, and approximately $0.72 per allegedly damaged share after deduction of attorneys' fees and expenses.

MASTER FILE NO. 12-CV-04677-YGR
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

15

1  that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do

2  not have class members' transactional data.

3  The proposed Plan of Allocation follows the statutory damages provision in the 1933 Act

4  governing Section 11 claims.  A Claimant's Recognized Loss per share of common stock will be

5  calculated as the difference between the purchase price <u>and</u> either (a) the actual sales price, if the

6  share was sold **before** the Action was commenced on September 7, 2012, or (b) if the share was

7  sold **after** the Action was commenced and on or before April 25, 2013 (the date Ubiquiti's share

8  price went above the $15.00 offering price), the greater of the actual sales price or the value of

9  the share on September 7, 2012, which is $12.03 (the closing price on September 7, 2012).  The

10  purchase price cannot exceed $15.00, a share's price in the IPO.  Shares held after April 25, 2013

11  will have a Recognized Loss of zero, because on April 25, 2013, Ubiquiti's share price went

12  above the $15.00 offering price and it has remained above $15.00 to date.

13  Once the Claims Administrator has processed all submitted claims, distributions will be

14  made to eligible Authorized Claimants.  After an initial distribution of the Net Settlement Fund,

15  if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds,

16  uncashed checks or otherwise) after at least six (6) months from the date of initial distribution,

17  Lead Counsel will, if feasible and economical, re-distribute the balance among Authorized

18  Claimants who have cashed their checks.  These re-distributions will be repeated until the

19  balance in the Net Settlement Fund is no longer feasible to distribute to Authorized Claimants.

20  Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not

21  feasible or economical to reallocate, after payment of any outstanding Notice and Administration

22  Expenses or Taxes, will be donated in equal amounts to Bay Area Legal Aid and Consumer

23  Federation of America—both of which have programs that assist consumers facing financial

24  fraud and other unfair treatment.  *See* Stipulation ¶ 26; *see also* https://baylegal.org/what-we-

25  do/stability/consumer-protections/; http://consumerfed.org/issues/consumer-protection/fraud/.

26  **E.    Anticipated Legal Fees, Litigation Expenses and Administrative Fees**

27  As set forth in the Notice, Lead Counsel intend to move for attorneys' fees of no more

28

than 25% of the Settlement Fund and litigation expenses of no more than $200,000.

A 25% fee would amount to $1.7 million, which is less than the legal fees billed by Lead Counsel to the case. Accordingly, the requested fee would provide no multiplier to Lead Counsel.

Lead Counsel's maximum expense figure is based upon total to date expenses of approximately $99,000, which includes the amounts below, plus a cushion to cover incurred expenses that have not yet been invoiced or expenses that will be incurred between now and Lead Counsel's motion for fees and expenses:

| Category | Amount |
|---|---|
| Consultants | $20,000.00 |
| Mediation | $10,000.00 |
| Duplicating | $5,600.00 |
| Long-Distance Telephone/Conference Calling | $560.00 |
| Investigators | $26,500.00 |
| Postage | $30.00 |
| Electronic Research | $15,000.00 |
| Out-of-Town Travel | $14,000.00 |
| Filing & Service Fees | $5,400.00 |
| Database Management | $140.00 |
| Messenger/FedEx/UPS | $410.00 |
| Transcripts | $150.00 |
| BusinessWire/PR Newswire | $1,100.00 |
| **TOTAL** | **$98,990.00** |

The Claims Administrator currently estimates that notice and administrative fees and expenses may be in the range of $160,000 to $250,000. This estimate assumes that 15,000 notice packets (consisting of a Notice and Claim Form) will be mailed and that 2,250 claims will be received. In the event that actual experience differs from these assumptions, the administrative fees and expenses incurred in connection with this Settlement will differ from this estimate.

## II. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

### A. Standards Applicable to Class Certification

At the Settlement Hearing, the Court will be asked to grant final approval of the

Master File No. 12-cv-04677-YGR
Lead Plaintiffs' Notice of Motion and Motion
for Preliminary Approval of Proposed Class Action Settlement

17

1   Settlement on behalf of the Settlement Class.  For that reason, it is appropriate for the Court to

2   consider, at the preliminary approval stage, whether the certification of the Settlement Class is

3   appropriate.  *See Jaffe v. Morgan Stanley & Co., Inc.*, No. 06-cv-3903 (TEH), 2008 WL 346417,

4   at *2 (N.D. Cal. Feb. 7, 2008).

5        Courts have acknowledged the propriety of certifying a class solely for purposes of a

6   class action settlement.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Indeed,

7   in the Ninth Circuit, "Rule 23 is to be liberally construed in a securities fraud context because

8   class actions are particularly effective in serving as private policing weapons against corporate

9   wrongdoing."  *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (citation and

10  internal quotations omitted); *see also In re THQ Inc. Sec. Litig.*, No. 00-cv-1783AHM(EX), 2002

11  WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("[T]he law in the Ninth Circuit is very well

12  established that the requirements of Rule 23 should be liberally construed in favor of class action

13  cases brought under the federal securities laws.") (citations omitted).

14       A settlement class, like other certified classes, must satisfy all the requirements of Rule

15  23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  Nevertheless,

16  the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class.  *See Amchem*

17  *Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is

18  not a consideration when settlement-only certification is requested.").

19       As discussed below, the Action satisfies all the factors for certification.  Under Rule

20  23(a), a class may be certified if: (i) it is so numerous that joinder of all members is

21  impracticable; (ii) there are questions of law and fact common to the class; (iii) the claims or

22  defenses of the representative parties are typical of the claims or defenses of the class; and (iv)

23  the representative parties will fairly and adequately protect the interests of the class.  *See, e.g.,*

24  *Sandoval v. Tharaldson Emp. Mgmt.*, No. 08-cv-00482-VAP (OPx), 2009 WL 3877203, at *1

25  (C.D. Cal. Nov. 17, 2009).  The proposed class additionally must fall within one of the three

26  categories of class actions defined in Rule 23(b).  *See, e.g., Desai v. Deutsche Bank Sec. Ltd.*,

27  573 F.3d 931, 936 (9th Cir. 2009).

28

Master File No. 12-cv-04677-YGR                                                          18
Lead Plaintiffs' Notice of Motion and Motion
for Preliminary Approval of Proposed Class Action Settlement

Lead Plaintiffs request that the Court preliminarily certify a Settlement Class of all Persons that purchased or acquired the publicly traded common stock of Ubiquiti Networks, Inc. pursuant and/or traceable to its October 14, 2011 IPO, excluding those persons and entities expressly identified in ¶ 1(gg) of the Stipulation.

### B.   The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.   Rule 23(a) Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  There is no fixed number of class members which either compels or precludes the certification of a class. *Arnold v. United Artists Theatre Circuit, Inc*., 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Indeed, the exact size of the class need not be known so long as "general knowledge and common sense indicate that [the class] is large." *Perez-Funez v. Dist. Dir., I.N.S*, 611 F. Supp. 990, 995 (C.D. Cal. 1984) (citation omitted).  In securities litigation, courts regularly find the numerosity requirement is satisfied with respect to putative purchasers of nationally traded securities on the volume of outstanding shares. *See Howell v. JBI, Inc*., 298 F.R.D. 649, 654-55 (D. Nev. 2014) ("in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied"); *Cooper Cos*., 254 F.R.D. at 634 ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year.  It is likely that thousands of people made such purchases.").

Here, there can be no dispute that the Settlement Class satisfies numerosity and consists of (at least) thousands of investors.  At least 6.8 million shares of Ubiquiti common stock were sold to the public pursuant to the October 14, 2011 IPO.  The average weekly trading volume of Ubiquiti common stock was approximately 2.4 million shares, or approximately 2.6% of the average total outstanding shares during this period. *Id.* Common sense dictates that these shares

Master File No. 12-cv-04677-YGR                                                                                    19
Lead Plaintiffs' Notice of Motion and Motion
for Preliminary Approval of Proposed Class Action Settlement

were purchased by thousands of investors, making joinder impracticable.

### 2.   Rule 23(a)(2):  Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   The Ninth Circuit construes this requirement "permissively," and has stated that that "[a]ll questions of fact and law need not be common to satisfy the rule."  *Hanlon*, 150 F.3d at 1019.

Securities cases have long been found to satisfy the commonality requirement:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement.   Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).").

In this case, common questions of both law and fact abound.   The central questions—whether the statements made or facts allegedly omitted from the Registration Statement issued in connection with the Company's October 14, 2011 IPO were materially false or misleading, and actionable under the federal securities laws—are the same for all class members.

### 3.   Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory.  *In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986).  Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist.  *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005).  Differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific

1  documents influencing the purchase will not render the claim atypical in most securities actions.

2  *See Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-02204-PHX-FJM, 2009 WL 2151838, at *4

3  (D. Ariz. July 17, 2009).

4        Here, Lead Plaintiffs' claims are typical to those of the other Members of the Settlement

5  Class.  Like all Settlement Class Members, Lead Plaintiffs purchased or acquired the publicly

6  traded securities of Ubiquiti pursuant or traceable to the Registration Statement, which is alleged

7  to contain materially false or misleading statements or omit material facts necessary to make the

8  statements not misleading.

9            **4.**      **Rule 23(a)(4)  The Lead Plaintiffs Are Adequate**

10        Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect

11  the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires

12  that two questions be addressed:  (a) do the named plaintiffs and their counsel have any conflicts

13  of interest with other class members and (b) will the named plaintiffs and their counsel prosecute

14  the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

15  462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

16        Here, Lead Plaintiffs are sophisticated institutional investors who have and will continue

17  to represent the interests of the Settlement Class fairly and adequately.  This is evidenced by

18  Lead Plaintiffs' aggressive pursuit of this action for some five years and having secured a

19  settlement amount of 35% of potential estimated damages – a percentage well in excess of

20  typical securities settlements.  There is no antagonism or conflict of interest between Lead

21  Plaintiffs and the proposed Settlement Class.  Lead Plaintiffs and Members of the Settlement

22  Class share the common objective of maximizing their recovery from Defendants when

23  considering the totality of the relevant circumstances.

24        In addition, Lead Counsel have extensive experience and expertise in complex securities

25  litigation and class action proceedings throughout the United States.[7]  Lead Counsel are well

26

27     [7] *See* Lead Counsel's Firm Resumes (Exs. 2, 3); *see also In re Bear Stearns Cos. Inc. Sec.,*

28  *Derivative, & ERISA Litig.*, No. 07-cv-10453, 2009 WL 50132, at *10 (S.D.N.Y. Jan. 5, 2009) (stating that Labaton Sucharow has "substantial experience in the prosecution of shareholder and securities class actions"); *In re AT&T Corp. Sec. Litig.*, MDL No. 1399, 2005 U.S. Dist. LEXIS

MASTER FILE NO. 12-CV-04677-YGR
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

21

1    qualified and able to conduct the Action and has ably and effectively represented Lead Plaintiffs

2    and the proposed Settlement Class throughout the Action.  Therefore, Rule 23(a)(4) is satisfied.

3         **C.**    **The Settlement Class Meets the Requirements of Rule 23(b)(3)**

4           **1.**    **Common Questions of Law or Fact Predominate**

5         Rule 23(b)(3) sets forth two requirements, the first being that the "questions of law or fact

6    common to the class members predominate over any questions affecting only individual

7    members." Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes

8    are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at

9    623.  "When common questions present a significant aspect of the case and they can be resolved

10   for all members of the class in a single adjudication, there is clear justification for handling the

11   dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022

12   (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice &

13   Procedure § 1778 (2d ed. 1986)).  The predominance requirement is "readily met" in securities

14   class actions.  *Amchem Prods.*, 521 U.S. at 625; *see also Cooper Cos.*, 254 F.R.D. at 632

15   ("[S]ecurities fraud cases fit Rule 23 'like a glove.'") (citation omitted).

16        Here, common questions of law and fact predominate over individual questions because

17   allegedly false or misleading statements and omissions in the Registration Statement affected all

18   Settlement Class Members in the same manner.  "The Ninth Circuit has repeatedly found that

19   common issues predominate in federal securities actions where the proposed class members have

20   all been injured by the same alleged course of conduct."  *In re First Capital Holdings Corp. Fin.*

21   *Prods. Sec. Litig.*, No. MDL-901, 1993 WL 144861, at *6 (C.D. Cal. Feb. 26, 1993).

22          **2.**    **A Class Action Is a Superior Method of Adjudication**

23        Finally, Rule 23(b)(3) also requires that the action be superior to other available methods

24   for the fair and efficient adjudication of the controversy.  The rule lists several matters pertinent

25   to this finding:

26

27   46144, at *28-29 (D.N.J. Apr. 25, 2005) (stating that Robbins Geller has "highly skilled
     attorneys with great experience in prosecuting complex securities action[s], and their

28   professionalism and diligence displayed during [this] litigation substantiates this
     characterization.").

1      (A)     the class members' interests in individually controlling the prosecution or defense

2  of separate actions;

3      (B)     the extent and nature of any litigation concerning the controversy already begun

4  by or against class members;

5      (C)     the desirability or undesirability of concentrating the litigation of the claims in the

6  particular forum; and

7      (D)     the likely difficulties in managing a class action.

8  Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Desai*, 573 F.3d at 937.  Each factor weighs in favor of

9  superiority here.  *See, e.g., McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615

10  (S.D. Cal. 2007) (noting "class action is the superior method for fair and efficient adjudication"

11  because individual suits would "'clog [ ] the federal courts with innumerable individual suits

12  litigating the same issues repeatedly,'" the plaintiffs assert complex claims that would be "very

13  costly to litigate," and each claim is for a "relatively small amount") (alteration in original)

14  (citation omitted).

15      Further, without the settlement class device, Defendants could not obtain a class-wide

16  release, and therefore would have had little, if any, incentive to enter into the Settlement.

17  Certification of a class for settlement purposes will allow the Settlement to be administered in an

18  organized and efficient manner.

19      Accordingly, this Court should preliminarily certify the Settlement Class.

20

21                    **CONCLUSION**

22      For the foregoing reasons, Lead Plaintiffs respectfully request that the Court issue an

23  order substantially in the form of the proposed Preliminary Approval Order: (a) preliminarily

24  certifying the Settlement Class; (b) preliminarily approving the Settlement; (c) holding that the

25  manner and forms of notice set forth in the Preliminary Approval Order satisfy due process and

26  provide the best notice practicable under the circumstances, and ordering that notice be provided

27  to the Settlement Class; (d) setting a date for the Settlement Hearing; (e) appointing Lead

28

Master File No. 12-cv-04677-YGR                                      23
Lead Plaintiffs' Notice of Motion and Motion
for Preliminary Approval of Proposed Class Action Settlement

1   Plaintiffs as Class Representatives and Lead Counsel as Class Counsel for the Settlement Class;

2   (f) appointing GCG as Claims Administrator; and (h) granting such other and further relief as

3   may be required.

4
    Dated: August 4, 2017                          Respectfully submitted,
5
                                                    LABATON SUCHAROW LLP
6
                                                    /s/ Jonathan Gardner
7                                                   JONATHAN GARDNER (pro hac vice)
                                                    MICHAEL P. CANTY (pro hac vice)
8                                                   ROGER W. YAMADA (pro hac vice)
                                                    140 Broadway
9                                                   New York, NY 10005
                                                    Telephone: 212/907-0700
10                                                  212/818-0477 (fax)

11                                                  ROBBINS GELLER RUDMAN
                                                      & DOWD LLP
12                                                  CHRISTOPHER P. SEEFER (201194)
                                                    DANIEL J. PFEFFERBAUM (248631)
13                                                  Post Montgomery Center
                                                    One Montgomery Street, Suite 1800
14                                                  San Francisco, CA 94104
                                                    Telephone: (415) 288-4545
15                                                  Facsimile: (415) 288-4534

16                                                  *Lead Counsel for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2017,  I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 4, 2017

/s/ Jonathan Gardner
JONATHAN GARDNER

**Mailing Information for a Case 12-cv-04677-YGR**

*In re Ubiquiti Networks, Inc. Securities Litigation*

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael P. Canty**

  mcanty@labaton.com,lmehringer@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.com

- **Ethan D. Dettmer**

  edettmer@gibsondunn.com,rmcbain@gibsondunn.com

- **Iona M. Evans**

  ievans@labaton.com

- **Jonathan Gardner**

  jgardner@labaton.com,jjohnson@labaton.com,cvillegas@labaton.com,tdubbs@labaton.com,ryamada@labaton.com,acoquin@labaton.com,lmehringer@labaton.com,fm

- **Lionel Z. Glancy**

  info@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**

  michael@goldberglawpc.com

- **Christopher T. Heffelfinger**

  cheffelfinger@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Jeremy A. Lieberman**

  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Gavin Masuda**

  gavin.masuda@lw.com,#sflitigationservices@lw.com

- **Danielle Suzanne Myers**

  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Daniel Jacob Pfefferbaum**

  DPfefferbaum@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Ashley Price**

  aprice@rgrdlaw.com

- **Robert Vincent Prongay**

  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com
- **Christopher Paul Seefer**
  chriss@rgrdlaw.com,ptiffith@rgrdlaw.com,dhall@rgrdlaw.com,e_file_sd@rgrdlaw.com,tcraig@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Noah F. Stern**
  NStern@gibsondunn.com,VYu@gibsondunn.com
- **Michael Walter Stocker**
  mstocker@labaton.com,ravan@labaton.com,lmehringer@labaton.com
- **Danielle A. Stoumbos**
  dstoumbos@finkelsteinthompson.com
- **Carol C. Villegas**
  cvillegas@labaton.com,thoffman@labaton.com,jchristie@labaton.com,mpenrhyn@labaton.com,acoquin@labaton.com,lmehringer@labaton.com,fmalonzo@labaton.co
- **Peter Allen Wald**
  peter.wald@lw.com,caroline.yu@lw.com,#sflitigationservices@lw.com,john.eastly@lw.com
- **David Conrad Walton**
  davew@rgrdlaw.com
- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Roger W. Yamada**
  ryamada@labaton.com,lmehringer@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

**Catherine J. Kowalewski**
Robbins Geller Rudman & Dowd LLP
655 W Broadway
Suite 1900
San Diego, CA 92101